BANCO POPULAR DE PUERTO RICO, demandante y recurrido, *v.* MUNICIPIO DE MAYAGÜEZ, demandado y recurrente.

*Número:* RE-87-19 *Resuelto:* 29 de junio de 1990

---

654

*José A. Menéndez Cortada,* de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero,* abogado del recurrente; *José B. Díaz Asencio,* de *Vicente Zayas Puig & José B. Díaz Asencio,* abogado del recurrido; *Carlos E. Siverio*

*Orta* y *Ramón L. Walker Merino*, abogados del Municipio de Arecibo, interventor; *Roberto C. Rodríguez Poventud* y *Ernesto N. Mayoral Megwinoff*, de *Bobonis, Bobonis & Rodríguez Poventud*, abogados del Banco de Ponce, interventor; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, Lorenzo Vilanova Alfonso, Miriam Álvarez Archilla* y *Sylvia Cancio Bigas, Procuradores Generales Auxiliares*, abogados del Estado Libre Asociado, interventor.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

(En Reconsideración)

Resolvemos la reconsideración presentada por el Banco Popular de Puerto Rico a la opinión *per curiam* emitida el 14 de marzo de 1988, *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988). Durante esta etapa tenemos el beneficio de la comparecencia, en calidad de *amicus curiae*, del Banco de Ponce. En esencia, se levantan tres (3) planteamientos constitucionales bajo las cláusulas del debido proceso de ley, igual protección y comercio interestatal. Examinemos sus méritos.

I

*Primero*, se aduce que la Ley de Patentes Municipales, 21 L.P.R.A. secs. 651 *et seq.*, no cumple con las exigencias del debido proceso de ley sustantivo. No tiene razón.

En materia de legislación económica, la garantía constitucional del debido proceso de ley sólo exige que la ley impugnada esté racionalmente relacionada con algún objetivo legítimo del Estado. Para que tal legislación pueda ser declarada inconstitucional, se requiere que sea arbitraria y que no guarde relación racional alguna con el propósito que persigue. *Salas v. Municipio de Moca*, 119 D.P.R. 625 (1987); *Morales v. Lizarribar*, 100 D.P.R. 717 (1972); *Roig v. Junta Azucarera*, 77 D.P.R. 342 (1954). Bajo este cuerpo doctrinario, la actual Ley de Patentes Municipales

está ampliamente justificada por importantes razones de orden público. Los medios que se utilizan para lograr sus objetivos son razonables. Tiene el propósito legítimo de ayudar económicamente a todo municipio, en particular aquellos de precaria situación fiscal. Según resolvimos, la ampliación del marco de actividades sobre las cuales podía tributarse —conforme la intención legislativa— ciertamente es un medio razonable para alcanzar sus objetivos.

■ Por otro lado, en casos de legislación fiscal, para que un estado pueda imponer una contribución sobre ingresos generados en el comercio interestatal, la cláusula del debido proceso de ley exige que concurran dos (2) condiciones: (a) un contacto mínimo entre la actividad interestatal y el estado impositor, y (b) un nexo racional entre el ingreso que se atribuye al estado para propósitos contributivos y los valores que posee el contribuyente dentro del estado impositor.

■ Ambas condiciones se cumplen en el caso que nos ocupa. Los ingresos generados fuera de Puerto Rico se atribuyen *indirectamente* a las actividades financieras realizadas en el banco localizado en el municipio. Los depósitos del banco local forman parte del volumen general de dinero que se invierte y genera ingresos fuera de Puerto Rico. En vista de ello, esos ingresos generados fuera de Puerto Rico proporcionalmente tienen un origen en el municipio. Además, la fórmula de tributación contenida en la ley es justa, pues el volumen de negocios se determina tomando en cuenta la proporción de los depósitos del banco localizado en el municipio con los depósitos totales de la organización financiera.

No procede la reconsideración a la luz de este primer señalamiento.

## II

En el segundo planteamiento constitucional se alega que la Ley de Patentes Municipales crea una clasificación impermisible

—entre negocios financieros y negocios no financieros— bajo la cláusula de la igual protección de las leyes. Tampoco le asiste la razón.

■ Según lo antes expuesto, en el área de legislación de carácter económico, la Asamblea Legislativa tiene amplia discreción para establecer clasificaciones, siempre y cuando estén razonablemente relacionadas con el propósito de la ley. Bajo tal esquema, la clasificación es válida si puede concebirse cualquier situación que la justifique. *M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319 (1987); *Wackenhut Corp. v. Rodríguez Aponte*, 100 D.P.R. 518 (1972).

Tal es la situación ante nos. La naturaleza peculiar de la actividad financiera justifica un trato diferente en cuanto a los elementos constitutivos del ingreso bruto y su fórmula de tributación. En vista de ello, la clasificación creada por la ley encuentra fundamento racional en la naturaleza de la organización bancaria que *se caracteriza por su funcionamiento a través de sucursales dentro y fuera de Puerto Rico.*

## III

Se aduce que la Ley de Patentes Municipales y su reglamento, según aplicados, violan la cláusula de comercio interestatal. Este argumento constitucional es el de mayor fuerza persuasiva. Veamos.

■ Hoy día el comercio interestatal no está inmune al poder de tributación de los estados. Sin embargo, para que sea válida una legislación impositiva de contribución sobre ingresos generados en el comercio interestatal, ésta debe evitar el riesgo de *múltiple tributación.*

Con anterioridad a los casos rectores de *Armco Inc. v. Hardesty*, 467 U.S. 638 (1984), y *Tyler Pipe Inds. v. Dept. of Revenue*, 483 U.S. 232 (1987) —para que prosperara un planteamiento de doble tributación— el contribuyente tenía que demostrar *afirmativamente* que algún otro estado le estaba imponiendo

una contribución sobre el mismo ingreso proveniente del comercio interestatal. *Tyler Pipe Inds. v. Dept. of Revenue*, supra, pág. 242,(1) reiteró lo resuelto en *Armco Inc. v. Hardesty*, supra, y rechazó así la doctrina anterior:

> General Motors no constituye precedente. Como ya advertimos, en ese caso el resultado no dependió de la decisión del Tribunal a los efectos de si el impuesto era o no oneroso para el comercio interestatal. Nuestra razón para no adjudicar ese punto fue que el contribuyente "no había demostrado en qué sentido específico en términos constitucionales [el impuesto de otros estados] era oneroso para embarques idénticos mediante los cuales Washington mide sus impuestos". 377 U.S., a la pág. 449. *Es decir, cuando General Motors se adjudicó, el Tribunal exigió que el contribuyente tenía que probar que las transacciones interestatales específicas estaban siendo sujetas a impuestos múltiples para así poder reclamar la existencia de discrimen.* Véase también, *Standard Pressed Steel Co. v. Washington Revenue Dept.*, 419 U.S. 560, 563 (1975) (que rechaza una reclamación bajo la cláusula de comercio porque el contribuyente no demostró el riesgo de impuestos múltiples). *Sin embargo, en Armco categóricamente rechazamos este requisito.* El hecho de que el impuesto sobre ingresos brutos de Washington *sea inconstitucional de su faz* no puede aliviarse mediante el examen del efecto de la legislación aprobada en estados hermanos. *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 276–278 (1978). (Traducción y énfasis nuestros.)

Sin embargo, cabe señalar que tanto en *Armco Inc. v. Hardesty*, supra, como en *Tyler Pipe Inds. v. Dept. of Revenue*, supra, la legislación impugnada era de su faz discriminatoria. En vista de ello, hasta el caso *Goldberg v. Sweet*, 488 U.S. 252 (1989), permaneció en la penumbra si la nueva doctrina aplicaba también a situaciones en que el estatuto no era discriminatorio de su faz.(2)

---

(1) En *Tyler Pipe Inds. v. Dept. of Revenue*, 483 U.S. 232 (1987), se invalidó una legislación que permitía a una persona que vendía toda su producción dentro del estado pagar únicamente un impuesto por venta —eximiéndole del impuesto por producción— mientras que si la persona vendía también fuera del estado tenía que pagar *ambos* impuestos.

(2) Esta incertidumbre provocó en el caso de *Tyler Pipe Inds. v. Dept. of Revenue*, supra, pág. 253, opiniones concurrentes de los jueces Scalia y O'Connor. De particular

En *Goldberg v. Sweet*, supra, el Tribunal Supremo de Estados Unidos terminó con dicha incertidumbre al aplicar los criterios de consistencia interna y externa a una contribución que no era discriminatoria de su faz.(3)

A la luz de estos criterios, y debido al riesgo de múltiple tributación, teóricamente nuestra Ley de Patentes Municipales podría resultar inconstitucional.

 No obstante, al evaluar las alternativas decisorias, notamos que existe una interpretación razonable de dicha ley que nos permite mantener su constitucionalidad. Esta legislación, a pesar de que no concede expresamente ningún crédito por contribuciones pagadas en el exterior, autoriza a que cuando se haya hecho un pago en exceso de cualquier patente, "el monto de dicho pago en exceso se acreditará contra cualquier patente sobre volumen de negocio o plazo de la misma entonces exigible a la persona, y cualquier remanente se reintegrará inmediatamente a la persona". 21 L.P.R.A. sec. 652f(a)(1). A tales efectos dispone que "el Tribunal Superior tendrá facultad para determinar el monto de dicho pago en exceso, y dicho monto será, cuando la decisión del Tribunal Superior sea firme, acreditado o reintegrado a la persona". 21 L.P.R.A. sec. 652f(c). Sin lugar a dudas, existe fundamento más que suficiente en la Ley de Patentes Municipales

---

interés es la de la Juez O'Connor, que entendió que debía limitarse a aquellos casos donde la ley impugnada era discriminatoria de su faz. Expuso:

"Suscribo la opinión del Tribunal que sostiene que 'en vista de que la exención de las actividades múltiples es discriminatoria de su faz' *ante*, a la pág. 11, véase *Maryland* v. *Louisiana*, 451 U.S. 725, 756–757 (1981), los contribuyentes de Washington no tienen que probar la existencia de un impacto discriminatorio 'mediante un examen de los impuestos utilizados por otros estados'. *Ante*, a la pág. 14. No interpreto la decisión del Tribunal como si extendiera el criterio de 'consistencia interna' descrito en *Armco, Inc.* v. *Hardesty*, 467 U.S. 638, 644–645 (1984), a los impuestos que no son discriminatorios de su faz, contra, post, a la pág. 4 (Scalia, J., opinión concurrente en parte y disidente en parte) y tampoco estaría de acuerdo con dicho resultado en este caso. Véase, *American Trucking Assns., Inc.* v. *Scheiner*, 483 U.S. 266 (1987)." (Traducción nuestra.)

(3) El análisis de consistencia interna exige que la contribución bajo ataque esté estructurada de forma tal que si cada estado impone una contribución idéntica no se dé el fenómeno de múltiple tributación. Por su parte, el de consistencia externa consiste en examinar si el estado ha gravado únicamente aquella porción de los ingresos provenientes del comercio interestatal que razonablemente refleja el componente estatal (*in-state*) de la actividad tributada.

.

para reconocer bajo la misma un crédito por contribuciones pagadas en las sucursales del exterior. En materia de hermenéutica constitucional, es principio firmemente establecido que "el Poder Judicial —en abono de una deferencia hacia el Poder Legislativo— debe esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley". *P.R.P. v. E.L.A.*, 115 D.P.R. 631, 642 (1984). Véase *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618 (1981).

El crédito que hoy reconocemos vía interpretación —no por creación ni legislación— tiene el propósito de asegurar la constitucionalidad de nuestra Ley de Patentes Municipales ante un ataque de acuerdo con la cláusula de comercio interestatal, pues elimina el riesgo de que se incurra en doble tributación.

## IV

Antes de concluir, y a la luz de los fundamentos expuestos en la opinión disidente del Juez Asociado Señor Hernández Denton, se imponen algunas aclaraciones.

■ Primero, la fuente que confiere a las Asambleas Municipales la facultad de imponer una patente a los negocios financieros de su municipio es la propia ley. La misma eliminó toda referencia limitativa en términos geográficos. Véase la sec. 651c de la citada ley que suprimió el lenguaje restrictivo de "las operaciones en Puerto Rico". Dicha patente deberá ser computada tomando como fundamento el volumen de negocios durante su año de contabilidad inmediatamente anterior a la fecha de la declaración. Por otro lado, en su sec. 651a(6)(A) y (B) define, como regla general, el concepto "volumen de negocios" y cuando se trata de un negocio financiero, del modo siguiente:

(A) Regla general —El término "volumen de negocios" significa los ingresos brutos *que se reciben* o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier

otra industria o negocio en el municipio donde la casa principal realiza sus operaciones o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción o cualquier otro tipo de organización de industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios.

(B) Negocio financiero —Cuando se trate de negocio financiero el "volumen de negocios" será los ingresos brutos recibidos o devengados excluyendo:

(1) el costo de la propiedad vendida;

(2) los reembolsos de anticipos, préstamos y créditos concedidos, pero sin que la suma deducida por estos conceptos exceda el principal de dichos anticipos, préstamos o créditos;

(3) los depósitos; y

(4) las pérdidas incurridas en cualquier operación sobre valores, pero sin que la deducción que se haga por ese concepto exceda del total de las ganancias obtenidas por dichos valores.

*En el caso específico de bancos comerciales* y asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro[,] el *ingreso bruto significará los intereses recibidos o devengados de préstamos,* los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores *y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia.*

El ingreso bruto devengado por estas organizaciones sujeto al pago de patentes se distribuirá entre las sucursales de acuerdo con la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización. (Énfasis suplido.)

Bajo ambas disposiciones arribamos a la misma conclusión: los ingresos *recibidos* en Puerto Rico de fuentes externas son incluibles en el cómputo de volumen de los negocios.

■ Además de la regla general, del último párrafo del inciso (B) surge diáfanamente que en el caso específico de los bancos la propia ley establece que el fundamento para el cómputo del ingreso bruto de la sucursal en el municipio *es la propia organización financiera,* cuyo ingreso bruto tiene que distribuirse para efectos del pago de patentes en proporción a los depósitos totales

obtenidos por la organización financiera. *Por lo tanto, si la organización financiera tiene sucursales fuera de Puerto Rico, se tienen que incluir en dicho cómputo los ingresos recibidos en Puerto Rico derivados de inversiones y operaciones de su capital realizadas en dichas sucursales.*

*Segundo,* la Ley de Patentes Municipales de 1974 sí contiene —en términos expresos, diáfanos y precisos— suficiente lenguaje para sostener que un municipio puede gravar los ingresos de los bancos, una vez son recibidos en Puerto Rico, derivados de fuentes fuera de la demarcación territorial. Bajo dicha ley, la autoridad concedida a los municipios para imponer y cobrar patentes es *amplia y no puede dársele una interpretación restrictiva.*

De la precitada sec. 651a(6) surge que la Asamblea Legislativa *expresamente* estimó, como *parte del ingreso bruto de los bancos,* los "ingresos derivados de cualquier otra procedencia". De igual modo, tomando en consideración la naturaleza de la organización bancaria y su funcionamiento a través de sucursales dentro y fuera de Puerto Rico, expresamente creó una fórmula de distribución proporcional en la que el volumen de negocios de los bancos se determina de acuerdo con la proporción que guarden los depósitos de la sucursal localizada en el municipio con los depósitos totales de la organización financiera en Puerto Rico. Sobre el particular, el Informe de la Cámara de Representantes del P. de la C. 1254 —que posteriormente se convirtió en la Ley Núm. 4 de 14 de noviembre de 1974 (21 L.P.R.A. sec. 651a *et seq.*)— estableció:

> Asimismo, se enmienda la Ley para disponer claramente que en los casos de bancos comerciales, asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro, la patente a pagarse a los municipios donde estén localizadas sucursales deberá determinarse sobre la base de la proporción que guarden *los depósitos de todas clases en las sucursales con los depósitos totales de la organización.* (Énfasis suplido.)

De acuerdo con lo expuesto, forzoso es concluir que para poder computar los depósitos *totales* de una organización bancaria

con sucursales fuera de Puerto Rico tienen que tomarse en consideración los ingresos recibidos en Puerto Rico provenientes de depósitos de las sucursales en el exterior.

▪ Con respecto al argumento de que el contenido del formulario "demuestra que el Secretario de Hacienda interpretaba, hasta la aprobación del Reglamento, que la Ley de Patentes solamente sujetaba los ingresos por intereses generados por préstamos otorgados en la isla", cabe reiterar que el Secretario de Hacienda puede en cualquier momento reformular una norma administrativa interpretativa de una ley, cuando dicha norma tiene el efecto de corregir o mejorar una anterior para conformarla más adecuadamente a la ley y a las nuevas circunstancias. *Licorería Trigo, Inc. v. Srio. de Hacienda*, 94 D.P.R. 270, 281 (1967). *Nuestra misión adjudicativa judicial no nos permite pautar el derecho a base de formularios.* La sustancia de la ley es lo verdaderamente importante. Ratificamos la interpretación plasmada en nuestra decisión *per curiam.*

A tono con lo expuesto, y en vista del propósito de la Ley de Patentes Municipales, la política pública que encarna y los términos de nuestra decisión *per curiam*, procede por vía de reconsideración únicamente modificar nuestro mandato a los fines de devolver al foro de instancia el caso para que éste, conforme la Sec. 34(c) de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 652f(c), de ser necesario, reconozca la procedencia de cualesquiera créditos por aquellas contribuciones pagadas por el Banco Popular de Puerto Rico en sus sucursales del exterior.

El Juez Asociado Señor Rebollo López emitió voto particular de conformidad. El Juez Asociado Señor Hernández Denton emitió opinión disidente.

—O—

Voto particular de conformidad emitido por el Juez Asociado Señor Rebollo López.

Nos complace que el Tribunal, mediante la opinión mayoritaria que en reconsideración emite en el día de hoy, haya resuelto

corregir los errores en que incurrió al emitir la opinión *per curiam* el 14 de marzo de 1988, los que nos obligaron a disentir en aquella ocasión.

Al jurisprudencialmente establecer el mecanismo —vía un crédito— que impide que se incurra en la práctica inconstitucional de la doble tributación y al aclarar que los ingresos sujetos a tributación por las instituciones bancarias, derivados de inversiones y operaciones de las sucursales de éstas localizadas fuera de Puerto Rico, *son los recibidos por éstas en Puerto Rico*, la opinión mayoritaria emitida subsana las objeciones del solitario disenso que hicimos constar en la ocasión anterior.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

(En Reconsideración)

El 14 de marzo de 1988 resolvimos, mediante opinión *per curiam*, que era válida la disposición del reglamento de la Ley de Patentes Municipales, Reglamento sobre Patentes Municipales, Departamento de Hacienda, Reglamento Núm. 3142 de 22 de agosto de 1984 (Reglamento Núm. 3142), que autorizaba a los municipios a incluir en el cómputo de dicha imposición a los bancos los ingresos no exentos derivados de operaciones efectuadas fuera de Puerto Rico. *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692 (1988). Al así proceder, aprobamos la actuación municipal de la ciudad de Mayagüez de imponerle, desde el Año Fiscal 1979–1980, una deficiencia al Banco Popular y expresamos que la Ley de Patentes Municipales contiene "suficiente lenguaje" en que apoyar la tesis de que un municipio puede gravar los ingresos recibidos en Puerto Rico aunque sean derivados de fuentes que provienen de fuera de la demarcación territorial.

El Banco Popular oportunamente solicitó la reconsideración de nuestro dictamen. En su escrito cuestiona nuestra interpretación de la Ley de Patentes Municipales y expone objeciones

constitucionales que no fueron atendidas por nuestra decisión anterior.[1]

Por entender que la Ley de Patentes Municipales no autoriza al Municipio de Mayagüez a imponer dicha contribución a base de ingresos generados fuera de Puerto Rico y que, por ende, su actuación fue *ultra vires*, reconsideraría nuestro anterior dictamen, anularía el Reglamento sobre Patentes Municipales y confirmaría la sentencia del Tribunal Superior.

I

Dentro de nuestro ordenamiento constitucional, los municipios son criaturas jurídicas de la Asamblea Legislativa. *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 198 (1983). Corresponde a la Legislatura la facultad para determinar todo lo relativo al régimen municipal y su funcionamiento. Art. VI, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1. Por su naturaleza, los municipios no tienen poder para imponer contribuciones en ausencia de una ley que así lo autorice. *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 339 (1988).

La Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. secs. 2001–3458), autoriza a los municipios a imponer una serie de tributos. Véanse: Arts. 2.04(24) a (27), 21 L.P.R.A. secs. 2054(24) a (27). En relación con contribuciones no impuestas sobre la propiedad, el estatuto rector autoriza a los municipios a:

> Imponer y cobrar contribuciones, derechos, arbitrios e impuestos razonables *dentro de los límites territoriales del municipio* sobre materias no incompatibles con la tributación impuesta por el Estado. (Énfasis suplido.) Art. 2.04(27), 21 L.P.R.A. sec. 2054(27).

Por otro lado, la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651 *et seq.*), autoriza a las

---

[1] A los fines de evaluar los méritos de los planteamientos, le concedimos un término al Municipio de Mayagüez y al Procurador General para que expresaran su posición. También aceptamos la intervención del Banco de Ponce y del Municipio de Arecibo como *amicus curiae*.

Asambleas Municipales a imponer y cobrar una "patente" que si bien adopta la forma de permiso o licencia realmente constituye un impuesto o contribución. *American Express Co. v. Mun. de San Juan,* supra.

Aunque hemos descartado el enfoque interpretativo restrictivo del poder tributario de los municipios en relación con la patente municipal,(2) esto no significa que el ejercicio de la facultad de imponer contribuciones pueda conducirse sin limitaciones. El ámbito de la imposición municipal debe siempre tener un fundamento razonable en la ley que la autoriza. Véase McQuillin, *Mun. Corp.* Sec. 44.17 (3ra ed). En ausencia de este apoyo, no puede sostenerse el reclamo del poder tributario municipal.

Más aún, para que un municipio pueda imponer una contribución sobre el ingreso bruto derivado de fuentes fuera de su territorio es imprescindible que la Legislatura haya delegado esa autoridad de manera *expresa, diáfana* y *precisa. Banco Popular v. Mun. de Mayagüez,* 120 D.P.R. 692 (1988). *La legislación vigente no contiene —en términos expresos, diáfanos y precisos— suficiente lenguaje para "apoyar la tesis de que un municipio puede gravar los ingresos de los bancos una vez sean recibidos en Puerto Rico, aunque sean derivados de fuentes fuera de la demarcación territorial".* Íd. Veamos.

## II

Mediante la Ley de Patentes Municipales de 1974, la Asamblea Legislativa delegó en los municipios la autoridad para imponer y cobrar la patente a "toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria o negocio *en los municipios del Estado Libre Asociado de Puerto*

---

(2) Compárese *Rubert v. Sancho Bonet, Tes.*, 58 D.P.R. 198, 208–209 (1941), con *American Express, Co. v. Mun. de San Juan*, 120 D.P.R. 339 (1988); *Arecibo Bldg. Corp. v. Mun. de Arecibo*, 115 D.P.R. 76, 78 (1984), y *Molinos de P.R. v. Municipio de Guaynabo*, 105 D.P.R. 470, 474 (1976).

*Rico*, excepto [por] lo que en otro sentido disponen las secs. 651 a 652y de este título". (Énfasis suplido.) 21 L.P.R.A. sec. 651c. Véase también la Sec. 3 de la citada Ley de Patentes Municipales, 21 L.P.R.A. sec. 651b.

En general, la patente es una contribución máxima de uno por ciento (1%) para el caso de los negocios financieros y de punto tres por ciento (0.3%) para los demás casos, computada a base del "volumen de negocios" de la entidad sujeta al impuesto. 21 L.P.R.A. sec. 651d. Como regla general, "volumen de negocios"

> . . . significa los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio *en el municipio donde la casa principal realiza sus operaciones* o los ingresos brutos que se reciban o se devenguen por la casa principal *en el municipio donde ésta mantenga,* oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción o cualquier otro tipo de organización de industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. (Énfasis suplido.) 21 L.P.R.A. sec. 651a(a)(6)(A).

No obstante, cuando se trata de un negocio financiero la Ley de Patentes Municipales define "volumen de negocios" como

> . . . los ingresos brutos recibidos o devengados excluyendo:
> (1) el costo de la propiedad vendida;
> (2) los reembolsos de anticipos, préstamos y créditos concedidos, pero sin que la suma deducida por estos conceptos exceda el principal de dichos anticipos, préstamos o créditos;
> (3) los depósitos; y
> (4) las pérdidas incurridas en cualquier operación sobre valores, pero sin que la deducción que se haga por ese concepto exceda del total de ganancias obtenidas por dichos valores.

En el caso específico de bancos comerciales y asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro el ingreso bruto significará los intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores *y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia.*

El ingreso bruto devengado por estas organizaciones sujeto al pago de patentes se distribuirá entre las sucursales de acuerdo con

la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización. (Énfasis suplido.) 21 L.P.R.A. sec. 651a(a)(6)(B).

La patente municipal, desde que se instituyó por primera vez en 1914, se contempló como una imposición a los ingresos provenientes de operaciones localizadas en Puerto Rico. La legislación precursora del actual estatuto sobre patente, la Ley Núm. 26 de 28 de marzo de 1914, en su Sec. 4, definía "volumen de negocios" como

. . . los ingresos brutos que tenga *en cualquier municipio* el negocio o industria *procedentes de las operaciones que realiza en Puerto Rico*, sin tener en cuenta sus ganancias o beneficios; esto es, tratándose de bancos o casas de banca particulares el mont[o] de los préstamos que realicen por cada año, cuando el término de tales préstamos sea un año o más o la parte proporcional de los mismos correspondiente a sus distintos términos si se hicieren por menos de un año, y el mont[o] de sus negocios en comisión, exceptuando la venta y cambio de giros o cheques; el importe de las ventas, tratándose de tiendas, casas de comercio u otras industrias; el mont[o] del valor de los fletes y pasajes en cada oficina establecida en cada municipio, tratándose de vehículos para el transporte terrestre; el mont[o] de sus ventas, tratándose de agentes comisionistas o corredores; el importe de lo recaudado por servicios telefónicos o eléctricos, tratándose de empresas de esta índole, y en general el mont[o] de los ingresos habidos por cualquier negocio hecho o servicio prestado, de acuerdo con la naturaleza del negocio o industria establecid[a]. (Énfasis suplido.) 1914 Leyes de Puerto Rico 184.

Mientras la ley tuvo este lenguaje fue interpretada por el Secretario de Justicia para sujetar únicamente los ingresos provenientes de operaciones localizadas en Puerto Rico. Op. Sec. Just. Núm. 1959–16; Op. Sec. Just. Núm. 1960–78.

La citada disposición fue enmendada por la Sec. 4 de la Ley Núm. 93 de 25 de junio de 1962, Leyes de Puerto Rico, pág. 262. La referencia expresa a "las operaciones [realizadas] en Puerto Rico" fue suprimida y se adoptó una definición general de "volumen de negocios" muy similar a la dispuesta por la Sec.

2(a)(6) de la vigente Ley de Patentes Municipales, 21 L.P.R.A. sec. 651(a)(6):

> Se entenderá por volumen de negocios para los efectos de esta ley, los ingresos brutos que se obtengan de un negocio o industria *en el municipio donde la casa principal realiza sus operaciones,* o los ingresos brutos que se obtengan por la casa principal *en el municipio donde ésta mantenga* oficina de ventas, almacén, o cualquier tipo de organización comercial o industria para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios . . . . (Énfasis suplido.)

La enmienda se produjo a raíz de la interpretación que le dimos a la citada Sec. 14 en el caso *The Shell Co. (P.R.) v. La Capital,* 82 D.P.R. 39 (1960). Allí resolvimos que cuando se trata de un establecimiento al por mayor con su oficina principal establecida en determinado municipio, pero haciendo negocios en toda la isla, la patente debe ser impuesta por el municipio en donde radica la oficina principal irrespectivamente de donde radiquen las sucursales. 15 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 3, pág. 1683 (1962). La Asamblea Legislativa modificó la Sec. 4 de la Ley de Patentes Municipales, *supra,* porque entendió

> . . . que no era buena política pública facultar a algunos municipios a imponer patentes a determinadas empresas por el volumen de negocios que éstos realizan fuera de la demarcación territorial del municipio en cuestión, si como consecuencia de ello se ha de privar a otros municipios de la facultad de imponer patentes por el volumen de negocios realizados [sic] por dichas empresas dentro de los propios límites territoriales correspondientes a tales otros municipios . . . . [L]o justo y equitativo es que cada municipio pueda tener acceso, a los fines de imponer las patentes que se requieran, exclusivamente al volumen de negocios realizado dentro de su propio ámbito geográfico. Íd.

En modo alguno esta enmienda tuvo como propósito eliminar la limitación de que los ingresos debían provenir de operaciones realizadas en Puerto Rico.

Aunque la Ley de Patentes Municipales de 1974 amplió el número de industrias o negocios cubiertos, *no hay nada en la ley*

*ni en su historial que permita una inferencia razonable de que fue la intención legislativa gravar ingresos de fuentes fuera de Puerto Rico.* Esto lo corrobora la propia práctica administrativa de los municipios y del Departamento de Hacienda desde la aprobación de la ley. De la propia planilla o formulario preparado por el Departamento de Hacienda y circulado a los municipios para ser complementados por los contribuyentes en sus declaraciones sobre volumen de negocios se desprende que la interpretación de la Ley de Patentes Municipales que hacía el Secretario de Hacienda coincidía con las citadas opiniones del Secretario de Justicia. La pág. 2 del Formulario Núm. 73 contiene varios encasillados para computar y determinar el volumen de negocios de distintas organizaciones.(3) El encasillado tres (3) corresponde a los bancos comerciales, asociaciones de ahorro y préstamo, y bancos mutualistas y de ahorro.

Un examen de los distintos renglones del encasillado tres (3) revela que en relación con el ingreso por intereses, la partida Núm. 4 señala para su inclusión sólo los "Intereses Recibidos o Devengados sobre Préstamos *Concedidos en Puerto Rico*". (Énfasis suplido.) Apéndice I, pág. 2. En la partida Núm. 15 que se utiliza para el cómputo de la fórmula de atribución proporcional a base de los depósitos en sucursales del municipio únicamente se incluye el "Total de depósitos de la *Organización en Puerto Rico*". (Énfasis suplido.) Apéndice I, pág. 2. Esto demuestra que el Secretario de Hacienda interpretaba, hasta la aprobación del Reglamento sobre Patentes Municipales, que la Ley de Patentes Municipales solamente sujetaba los ingresos por intereses generados por préstamos otorgados en la isla.

Pero a pesar de esa práctica administrativa, el 28 de septiembre de 1982 el Municipio de Mayagüez notificó una deficiencia al Banco Popular por no haber incluido en el ingreso bruto los ingresos derivados de inversiones y operaciones de su capital hechos en sus sucursales fuera de Puerto Rico.

---

(3) Hemos incluido como apéndice una copia del Formulario Modelo Núm. 73 (revisado en marzo de 1980) y que fue utilizado por el banco recurrido para complementar la declaración sobre volumen de negocios para 1982.

El Banco Popular oportunamente cuestionó la deficiencia que se le había notificado. Mientras se ventilaba su solicitud de reconsideración, el Secretario de Hacienda promulgó el 10 de agosto de 1984 el reglamento actual, que enmendó la definición general de "ingreso bruto", para incluir los ingresos recibidos de fuentes fuera de Puerto Rico, en específico

> . . . la totalidad de los ingresos *de fuentes dentro o fuera de Puerto Rico* que se reciben o se devenguen en la operación que se lleva a cabo en cada Municipio, incluyendo todos los ingresos adicionales como intereses y dividendos atribu[i]bles a la operación. (Énfasis suplido.) Art. 2(7)(A) del Reglamento de Patentes Municipales, *supra.*

El Reglamento de Patentes Municipales no modificó sustancialmente la definición de "volumen de negocios" para fines de un negocio financiero, pero al atender el caso específico de los bancos comerciales, mutualistas o de ahorro y las asociaciones de ahorro y préstamo, cambió radicalmente las reglas del juego establecidas desde 1974 e incorporó un lenguaje incompatible con la Ley de Patentes Municipales.

> Bancos — En el caso específico de bancos comerciales y asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro el ingreso bruto significará los intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores, *y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia dentro o fuera de Puerto Rico atribuibles a la operación en Puerto Rico.* Disponiéndose, que los intereses sobre obligaciones del Estado Libre Asociado, sus instrumentalidades y municipios así como de las obligaciones de los Estados Unidos no serán incluidos como ingreso bruto.
> El ingreso bruto devengado por estas organizaciones sujeto al pago de patentes se distribuirá entre las sucursales de acuerdo con la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización. (Énfasis suplido.) Art. 2(7)(B) del Reglamento de Patentes Municipales, *supra.*

Este reglamento entró en vigor el 21 de septiembre de 1984 y no es aplicable a los ingresos provenientes del exterior recibidos

por los bancos antes de esa fecha. Sin embargo, el reglamento refrenda la tesis invocada por el Municipio de Mayagüez en la controversia ante nos. Aunque en estricto derecho el Reglamento de Patentes Municipales no es aplicable a las deficiencias notificadas en el caso de autos, su validez también depende de que la Ley de Patentes Municipales le otorgue facultad a los municipios para imponer patentes por el tipo de ingresos que origina esta controversia. Por las razones expuestas en esta ponencia es evidente que el Reglamento de Patentes Municipales también es *ultra vires* y no se puede utilizar para imponer ese tipo de patentes con posterioridad a su vigencia. Ahora bien, ¿tanto el Tesorero Municipal como el Secretario de Hacienda tenían autoridad en ley para ampliar el ámbito de la tributación municipal y gravar los ingresos derivados de fuentes fuera de Puerto Rico con la imposición de la patente? Entiendo que no.

## III

Nuestra decisión anterior fundó la autoridad del Municipio de Mayagüez para gravar con una patente los ingresos provenientes de fuera de Puerto Rico en el segundo párrafo de la Sec. 2(a)(6)(B) de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651a(a)(6)(B), específicamente la frase final. Esta disposición determina el "ingreso bruto" sujeto a la patente en el caso específico de los bancos. Como definición del término, la ley enumera varias partidas de ingresos y concluye con la frase: "y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia." Íd. Resolvimos que "procedencia" significaba "origen" y que, por lo tanto, en el caso de los bancos, el tesorero municipal tenía facultad para computar la patente a base de la totalidad de los ingresos de fuentes dentro o fuera de Puerto Rico recibidos o devengados por la operación en cada municipio. Examinada nuevamente la comparecencia original de las partes y los escritos sometidos en reconsideración, estamos convencidos de que debemos reconsiderar nuestra interpretación anterior del alcance de esta cláusula.

En primer lugar, *en correcta hermenéutica jurídica*, la frase "y las ganancias, beneficios e ingresos derivados de cualquier otra

procedencia", 21 L.P.R.A. sec. 651a(a)(6)(B), no puede interpretarse en el sentido geográfico como se pretende mediante reglamento. Cuando en una ley las palabras de significación general siguen a vocablos específicos en una enumeración descriptiva, las palabras generales se deben interpretar para incluir únicamente objetos similares en su naturaleza a los enumerados por los términos específicos precedentes. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 341. Esta doctrina de interpretación estatutaria se conoce como *ejusdem generis* (del latín "del mismo género o especie") o la Regla de Lord Tenderson. Íd. La regla "[i]ntenta reconciliar la incompatibilidad entre palabras generales y específicas en vista de otras reglas de hermenéutica legal, como la de que hay que darle efecto a todas las palabras del estatuto y que la Asamblea Legislativa no usa palabras superfluas". Íd.

La doctrina es aplicable en las circunstancias siguientes:

(1) el estatuto contiene una enumeración por palabras específicas; (2) los miembros de la enumeración constituyen una clase; (3) la enumeración no cubre toda la clase; (4) un término general sigue a la enumeración; y (5) no se manifiesta claramente la intención de que se le dé al término general un significado más amplio que el exigido por la doctrina. *Puerto Rico Ilustrado v. Buscaglia, Tes.*, 64 D.P.R. 914, 922 (1945).

En este caso, el segundo párrafo de la Sec. 2(a)(6)(B) de la Ley de Patentes Municipales, *supra*, enumera mediante vocablos específicos lo que "ingreso bruto" significa cuando se trata de negocios financieros de tipo bancario, a saber: "intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas [y] el beneficio bruto en la venta de propiedades o valores." Existe también un denominador común de toda esta enumeración que consiste en pertenecer a renglones o tipos de ingreso. La enumeración no agota el género, pues existen otras clases de ingreso no cubiertas por las expresadas. Por otro lado, existe una frase general después de la enumeración, a saber: "y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia." 21 L.P.R.A. sec. 651a(a)(6)(B).

El quinto requisito es vital, ya que "[t]oda la ciencia sobre *ejusdem generis* carece de significación si el estatuto contiene la manifestación clara de una intención contraria". *Puerto Rico Ilustrado v. Buscaglia, Tes.*, supra, pág. 925. Después de todo, la doctrina de *ejusdem generis* "es sólo una ayuda". Íd. No se puede descansar en una máxima de interpretación si la verdadera intención legislativa ha sido otra. *Autoridad sobre Hogares v. Tribl. Superior,* 82 D.P.R. 344, 359 (1961).

Luego de un examen cuidadoso de la Ley de Patentes Municipales en su totalidad, no hemos podido identificar disposición alguna —además de la que está aquí en controversia— que conceda a los municipios facultad expresa o implícita para imponerle la patente a ingresos derivados fuera de Puerto Rico porque los mismos se reciban aquí. De hecho, *ni en la Ley de Patentes Municipales ni en su historial se mencionan esos ingresos. No debemos utilizar la "bola de cristal" para adivinar la "mens" legislativa y ratificar una actuación judicial incorrecta e inconstitucional.* Del análisis anterior es evidente la conclusión de que en este caso se cumplen todos los requisitos de la doctrina de *ejusdem generis* y procede anular la actuación del municipio y del Departamento de Hacienda.

Por otro lado, el término "procedencia", utilizado de forma general en la Sec. 2(a)(6)(B) de la Ley de Patentes Municipales, *supra*, tiene varios significados. Aun en una misma acepción, pueden interpretarse varios sentidos. En lo aquí pertinente, puede definirse como "origen, principio de donde nace o se deriva una cosa". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1106. Aunque no cabe duda que el vocablo puede tener un sentido geográfico, por la aplicación de la regla de *ejusdem generis* esta interpretación es insostenible. Como la enumeración específica de la citada Sec. 2(a)(6)(B) abarca tipos o clases de ingreso, "procedencia" se refiere también a ese género. Por consiguiente, en el estatuto dicho término significa "renglón, categoría o clasificación". En el contexto utilizado en la Ley de Patentes Municipales, "el origen o el principio" de un

ingreso es la *operación* particular que lo produce y *no el lugar* de dónde se deriva.

En segundo lugar, al aplicar la regla de interpretación contextual establecida en el Art. 17 del Código Civil, 31 L.P.R.A. sec. 17, el sentido geográfico debe rechazarse del mismo modo. Nótese que en el estatuto la palabra "procedencia" no se utiliza en la definición de "volumen de negocios" para los negocios financieros que no son bancos[4] ni tampoco en la definición general.[5] El término sólo se utiliza al definir el ingreso bruto que se considera parte del volumen de negocios bancarios. La razón es evidente. En el cómputo de la patente, la ley trata el negocio bancario de forma distinta al resto de los negocios financieros.

De acuerdo con la Sec. 6 de la Ley de Patentes Municipales, *supra*, toda persona que se dedique a industrias o negocios sujetos a la aplicación de distintas tasas pagará por separado la patente prescrita para cada industria o negocio. 21 L.P.R.A. sec. 651e. Es decir, la ley permite segmentar el volumen de negocios para excluir ciertas clases o tipos de ingresos de la tributación a la tasa máxima de uno por ciento (1%). *Cf. American Express Co. v. Mun. de San Juan*, supra. *No obstante, en el caso de los bancos el segundo párrafo de la citada Sec. 2(a)(6)(B) lo que pretende es cualificar esta regla al determinar, a través del lenguaje en controversia, que la base contributiva se computará sin el beneficio de la segmentación del volumen de negocios.*

La técnica legislativa utilizada para lograr este resultado fue definir el ingreso bruto de los bancos sujeto a la patente con una enumeración ejemplificativa de distintos renglones de ingreso (intereses, cargos por servicio, rentas, beneficios en la venta de propiedades y valores), seguida de la frase "y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia". 21 L.P.R.A. sec. 651a(a)(6)(B). Dentro del contexto de la ley, la mejor interpretación de la frase final del segundo párrafo es que fue utilizada por el Legislador para significar cualquier otro renglón

---

[4] Véase el primer párrafo de la Sec. 2(a)(6)(B), 21 L.P.R.A. sec. 651a(a)(6)(B).

[5] Véase Sec. 2(a)(6)(A), 21 L.P.R.A. sec. 651a(a)(6)(A).

o tipo de ingreso o actividad, pero siempre dentro del ámbito de la definición general de "ingreso bruto" de la citada Sec. 2(a)(6)(A) de la ley. Atribuirle un sentido geográfico es ampliar irrazonablemente la intención legislativa con un apoyo cuestionable en el texto de la ley y *crear —sin ninguna justificación— un discrimen arbitrario contra los bancos puertorriqueños que tienen sucursales fuera de la isla. Este limitadísimo grupo de contribuyentes sería el único que estaría sujeto a la patente por ingresos derivados de fuentes fuera Puerto Rico,*([6]) *situación que requería un análisis de la constitucionalidad de esta clasificación al amparo de la doctrina de igual protección de las leyes. Marina Ind., Inc. v. Brown Bovery Corp.*, 114 D.P.R. 64, 81–83 (1983).

## IV

Aunque sin prejuzgar los méritos de los planteamientos constitucionales, conviene hacer algunas expresiones sobre la posición de la mayoría con relación a la aplicación de la cláusula de comercio a los hechos de este caso.

El interventor Banco de Ponce señala que si los municipios de la isla sujetan al pago de la patente los ingresos de los bancos generados fuera de Puerto Rico, sin conceder ningún crédito por las contribuciones pagadas en el exterior, "se dará un supuesto de múltiple tributación" en violación de la Cláusula de Comercio de Estados Unidos. Memorando del Banco de Ponce, *Amicus Curiae*, pág. 35. La opinión emitida por el Tribunal considera que "[e]ste argumento constitucional es el de mayor fuerza persuasiva", opinión mayoritaria, pág. 658, pero lo rechaza luego de interpretar

---

([6]) Aunque la definición general de "ingreso bruto" del Reglamento Núm. 3142, Reglamento sobre Patentes Municipales, Departamento de Hacienda, 22 de agosto de 1984, incluye aquellos derivados de fuentes dentro o fuera de Puerto Rico, bajo la interpretación del término "procedencia" que una mayoría del Tribunal hoy refrenda, sólo se autoriza la imposición de la patente a base de ingresos originados fuera de la jurisdicción en el caso específico de los bancos. Nuestro anterior pronunciamiento no aprueba dicha imposición para otros negocios, ya que en este último caso claramente no tendría ninguna base en la ley.

que el caso de *Tyler Pipe Inds. v. Dept. of Revenue*, 483 U.S. 232 (1987),[7] está limitado únicamente a situaciones en donde el estatuto es discriminatorio de su faz.

Sin embargo, la opinión no interpreta correctamente la expresión más reciente del Supremo federal en *Goldberg v. Sweet*, 488 U.S. 252 (1989), sobre la constitucionalidad de un impuesto del estado de Illinois a las llamadas telefónicas interestatales. El impuesto allí *no* era discriminatorio de su faz. De hecho, el tribunal resolvió que no discriminaba contra el comercio interestatal. Íd., págs. 263–269. Al resolver que la contribución de Illinois era constitucional, el Tribunal aclaró que la exigencia de la cláusula de comercio de que el impuesto esté justamente distribuido (*fairly apportioned*) se determina mediante el examen del tributo para ver si es "consistente interna y externamente". Íd., pág. 261.

El criterio de consistencia interna requiere que la contribución "esté estructurada de tal modo que si cada estado fuera a imponer un impuesto idéntico, no resultaría en doble tributación". (Traducción nuestra.) *Goldberg v. Sweet*, supra, pág. 261. La prueba de consistencia externa consiste en determinar "si el estado le ha impuesto el tributo únicamente a aquella porción de los ingresos provenientes de comercio interestatal que razonablemente refleja el componente estatal (*in-state*) de la actividad tributada". (Traducción nuestra.) Íd.

Bajo el criterio de consistencia interna, no es necesario que el contribuyente pruebe la existencia de un tributo sobre el mismo ingreso. Simplemente se contempla la situación hipotética de que otros estados hayan aprobado un estatuto idéntico, y se examina si bajo ese supuesto existiría múltiple tributación.

Por otro lado, la mayoría, consciente de las implicaciones constitucionales de su decisión *y sin tener absolutamente ningún fundamento en ley, "crea" un crédito para evitar doble*

---

(7) En esta decisión el Tribunal Supremo de Estados Unidos resolvió que para probar el riesgo de múltiple tributación, un contribuyente no tiene que demostrar afirmativamente que algún otro estado le imponía una contribución sobre el mismo ingreso proveniente del comercio interestatal.

*tributación* para impedir que el Banco Popular invoque sus derechos al amparo de la Constitución federal. Al así hacerlo, viola el principio elemental del derecho tributario de que las deducciones, las exenciones y los créditos, por ser gracias legislativas al contribuyente, se interpretan restrictivamente en su contra. Véanse: *Central Igualdad, Inc. v. Srio. de Hacienda*, 83 D.P.R. 45, 50 (1961); *Descartes, Tes. v. Tribl. Contribuciones y Ortiz*, 73 D.P.R. 491, 497 (1952), y fuentes allí citadas. La opinión mayoritaria ha ido más allá de esta norma, pues realmente no se amplía un crédito dispuesto por ley, sino que se *"legisla judicialmente" para instituir un crédito nuevo* que no había sido contemplado en el esquema de la Ley de Patentes Municipales.

Para complicar aún más el problema creado por la opinión *per curiam* y los pronunciamientos elaborados en reconsideración, se devuelve el caso al foro de instancia sin unas directrices claras para darle la oportunidad al banco recurrido de demostrar la múltiple tributación, acción que ya vimos es errónea, y para que el tribunal le reconozca "la procedencia de *cualesquiera* créditos por *aquellas* contribuciones pagadas por el Banco Popular de Puerto Rico en [las] sucursales del exterior". (Énfasis suplido.) Opinión mayoritaria, pág. 664. ¿Qué tipo de contribución tiene que haber sido impuesta y pagada en otras jurisdicciones para que el crédito se conceda?

Por estas razones, *lo que procede es que por vía de reconsideración revoquemos nuestro dictamen anterior y confirmemos la sentencia del Tribunal Superior. Aunque hay un valor intrínseco en la certeza, rapidez y la consistencia en el proceso decisorio de esta Institución, rectificar oportunamente una decisión equivocada siempre es una iniciativa ejemplarizante en nuestra sociedad contemporánea.*

APÉNDICE I

serie Núm. 73
- mar 80

19 82 ESTADO LIBRE ASOCIADO DE PUERTO RICO 19 83

Mayaguez

Municipio

## DECLARACION SOBRE VOLUMEN DE NEGOCIOS
### PARA EL AÑO NATURAL 19____
### U OTRO AÑO CONTRIBUTIVO COMENZANDO EN
_____ 19____ Y TERMINADO EN _____ 19:____

| Nombre de la Industria, Negocio u Oficina de Servicios | Zona | Núm. de Cuenta o Seguro Social. |
|---|---|---|
| Banco Popular de Puerto Rico | | 66-017-5278 |

Dirección
Véase Anejo II

| Clase Industria, Negocio o Servicio | Fecha en que se estableció el Negocio |
|---|---|
| Banco Comercial | Octubre 1893 |

| Nombre del Dueño o Representante | Radicó usted Declaración de Volumen de Negocios el año anterior? Sí x___ No____ |
|---|---|
| Tere Loubriel, Vicepresidente Senior y Contralor | |

| Dirección Postal | Zip Code |
|---|---|
| G.P.O. Box 2708, San Juan, Puerto Rico | 00936 |

| Dirección Residencial | |
|---|---|
| G.P.O. Box 2708, San Juan, Puerto Rico | 00936 |

| Dirección de la Oficina Principal del Negocio, Industria u Oficina de Servicios | |
|---|---|
| G.P.O. Box 2708, San Juan, Puerto Rico | 00936 |

Determinación de la Patente a Pagar

* 1. Volumen de Negocios Año de Contabilidad Inmediatamente Anterior al Actual (Del Encasillado 2, 3 ó 4, según corresponda), Página 2 .......... $ 2,627,119

2. Tipo de Patente Fijado por la Asamblea Municipal .......... 1%

3. Patente a Pagar (Multiplique la partida 1 por la partida 2 y anote el producto aquí) .......... $ 26,271

* En caso de negocios financieros, el volumen de negocios será igual al Ingreso Bruto Ajustado.

### CERTIFICACION

CERTIFICO que el volumen de negocios aquí declarado es correcto y verdadero y que el Estado de Situación y Estado de Ganancias y Pérdidas que se acompaña refleja correctamente la situación financiera de este Negocio al 31 de diciembre de 19 81

3-11-82
Fecha

Firma de la Persona Sujeta al Pago de Patentes o su Agente Autorizado

### JURAMENTO

Yo, Tere Loubriel dueño o representante autorizado del negocio arriba indicado, declaro bajo las penalidades de perjurio que todo lo aquí expresado es cierto y me consta su certeza por conocimiento propio.

3-11-82
Fecha

4/6:12,573

Firma de la Persona Sujeta al Pago de Patentes o su Agente Autorizado

Jurado y suscrito ante mí por Tere Loubriel mayor de edad, de profesión Vicepresidente Senior y Contralor, y vecino de ASan Juan Puerto Rico, el 11 de marzo de 19 82

Timbre

Notario

KODESII Bi..
Notario
PUERTO RICO

Firma del Oficial que Administra el Juramento

## NOTA DE LA COMPILADORA:
La indefinición gráfica se debe al tamaño reducido de los modelos. Los originales constan en el expediente de este caso en el Tribunal Supremo.

APÉNDICE I (CONT.)

DETERMINACION DE VOLUMEN DE NEGOCIOS Página 2

| | |
|---|---|
| **ENCASILLADO 2** — Comercio e Industria; Derecho e Contabilidad | 1. Ingreso Bruto del Año de Contabilidad Inmediatamente Anterior al Actual _____ $ |
| | 2. Menos: Devoluciones en Ventas _____ |
| | 3. Ingreso Bruto Ajustado (Trasladarse a la partida 1, Encasillado 1 de la página 1) _____ $ |

(PARA SER CUMPLIMENTADO POR LA CASA PRINCIPAL)

4. Intereses Recibidos o Devengados Sobre Prestamos Concedidos en
 Puerto Rico _____ $

5. Cargos por Servicios _____

6. Rentas _____

7. Ingreso Bruto en la Venta de Valores _____

8. Ingreso Bruto en la venta de Propiedades _____

9. Menos: Costo de la Propiedad Vendida _____

10. Ingreso Bruto Ajustado en la Venta de Propiedades _____

11. Otros Ingresos Recibidos _____

12. Ingreso Bruto del Año de Contabilidad inmediatamente Anterior al Actual _____ $

13. Menos:

 a. Rembolsos de Anticipos, Prestamos y Créditos Concedidos
 (No debe exceder al principal de los mismos) _____ $

 b. Depósitos _____

 c. Pérdidas en operaciones sobre valores (No debe exceder del
 total de las ganancias obtenidas por los mismos) _____

14. Ingreso Bruto Ajustado Total de la Organización _____ Véase Anejo I $ 147,706,657

15. Total de depósitos de la Organización en Puerto Rico (Igual a
 partida 13 b) _____ $ 1,987,737

16. Total de depósitos de sucursal(es) en este Municipio _____ $ 35,354

17. Proporción que guarda el total de depósitos de la(s) sucursal(es) con
 depósitos totales de la organización (Divida la partida 16 entre la
 partida 15 y anote el resultado aquí) _____ 1.778606

18. Ingreso Bruto Ajustado de Sucursal(es) o Casa Principal en este Mu-
 nicipio (Multiplique la partida 14 por la partida 17) Trasládese a la
 partida 1, Encasillado 1 de la página 1 _____ $ 2,627,119

19. Ingreso Bruto del año de Contabilidad Inmediatamente Anterior al Actual _____ $

20. Menos:

 a. Costo de la Propiedad Vendida _____ $

 b. Rembolsos de Anticipos, Prestamos y Créditos Concedidos
 (No debe exceder al principal de los mismos) _____

 c. Pérdidas en operaciones sobre valores (No debe exceder del
 total de las ganancias obtenidas por los mismos) _____

21. Ingreso Bruto Ajustado (Trasladese a la partida 1, Encasillado 1 de la página 1) _____ $