BANCO POPULAR DE PUERTO RICO, demandante y recurrido, *v.* MUNICIPIO DE MAYAGÜEZ, demandado y recurrente.

*Número:* RE-87-19      *Resuelto:* 14 de marzo de 1988

694

*José A. Menéndez Cortada*, de *Martínez Álvarez, Fernández Paolí, Menéndez Cortada & Lefranc Romero*, abogado del recurrente; *José B. Díaz Asencio*, de *Zayas, Puig & Díaz Asencio*, abogado del recurrido.

I

PER CURIAM: ¿Incluye el cómputo de una patente munici-
pal de un banco los ingresos recibidos procedentes de inte-
reses de inversiones en obligaciones fuera de la demarcación
de Puerto Rico, y de obligaciones exentas de contribución
sobre ingresos?

Esta interrogante se plantea al amparo de la Ley de Pa-
tentes Municipales —Ley Núm. 113 de 10 de julio de 1974
(21 L.P.R.A. sec. 651 *et seq.*)— en ocasión del Municipio de
Mayagüez haber notificado al Banco Popular de Puerto Rico
(en adelante el Banco) una deficiencia de $102,009.61, corres-
pondiente a los años 1979–1980 a 1982–1983.

La referida ley requiere que toda persona sujeta al pago
de la patente rinda anualmente al municipio una declaración
sobre volumen de negocios, incluso *inter alia* el volumen de
negocios durante su año de contabilidad anterior, el cual se
toma como base para el cómputo. 21 L.P.R.A. secs. 651i y
651f. La acción municipal se produjo acorde con la definición
general sobre *ingreso bruto* contenida en el Reglamento so-
bre Patentes Municipales —Reglamento Núm. 3142, apro-
bado el 10 de agosto de 1984— del Secretario de Hacienda.
La deficiencia fue primordialmente el resultado de no haber
el Banco incluido en el *ingreso bruto* del cómputo sobre el
volumen de negocios de su sucursal local, los ingresos deri-
vados de inversiones y de operaciones de su capital hechas
fuera de la demarcación territorial de Puerto Rico, en sucur-
sales en Islas Vírgenes y los estados de California y Nueva
York y, además, de inversiones en bonos y valores del Go-
bierno de Estados Unidos y sus agencias federales y del Es-
tado Libre Asociado de Puerto Rico, sus agencias y sub-
divisiones políticas.

Ante el Tribunal Superior, Sala de San Juan, el Banco
cuestionó la deficiencia. Dicho foro la anuló y declaró ineficaz

el aludido Reglamento sobre Patentes Municipales. Inconforme, a solicitud del Municipio, revisamos.

## II

■■ "Hay que afirmar con Maxime Leroy que 'el Estado es demasiado vasto, demasiado pesado, demasiado alejado de las necesidades inmediatas', y que, por tanto, se requiere un organismo jurídico más próximo, más en contacto con los problemas locales, en condiciones adecuadas para atender debidamente todos aquellos que son consecuencia del contacto vecinal. Este organismo jurídico es el que denominamos Municipio. . . ." (Escolio omitido.) F. Albi, *Derecho municipal comparado del mundo hispánico*, Madrid, Ed. Aguilar, 1955, pág. 21. Esta cita recoge la razón de ser y finalidad principal de los municipios: satisfacer las necesidades públicas propias de la comunidad local. En síntesis, se trata de la creación de un ente mediante el cual el Estado puede atender de manera más efectiva "el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular". *Colón v. Municipio de Guayama*, 114 D.P.R. 193, 199 (1983); *Vélez v. Municipio de Toa Baja*, 109 D.P.R. 369 (1980).

■ La génesis y atributo de todo municipio es obra de la Asamblea Legislativa, que constitucionalmente tiene la "facultad para crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función; y [puede] autorizarlos, además, a desarrollar programas de bienestar general y a crear aquellos organismos que fueren necesarios a tal fin". Sec. 1, Art. VI, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 362.

■ Los municipios carecen de poder inherente para imponer tributos. Mediante mandato claro y expreso la Le-

gislatura puede delegar esta facultad. *Rubert* v. *Sancho Bonet, Tes.*, 58 D.P.R. 198 (1941). A tal efecto, al presente la Ley Orgánica de los Municipios —Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. sec. 2001 *et seq.*)— como regla general, reconoce el poder de tributación municipal *dentro* de sus límites territoriales y sobre materias no incompatibles con la tributación impuesta por el Estado mediante la Ley Núm. 113, *supra*. Bajo este esquema, y para atender sus necesidades presupuestarias, la Asamblea Legislativa autorizó a las Asambleas Municipales a imponer y cobrar una patente de acuerdo con las disposiciones de dicha ley a "toda persona dedicada con fines de lucro a la prestación de cualquier servicio, a la venta de cualquier bien, a cualquier negocio financiero [y/o] a cualquier industria o negocio en los municipios del Estado Libre Asociado de Puerto Rico . . .". Sec. 4 de la Ley Núm. 113 (21 L.P.R.A. sec. 651c).

## III

En el pasado prevalecía un enfoque restrictivo en materia de interpretación estatutaria del poder municipal para imponer contribuciones. Se aceptaba que su esfera de acción no debería extenderse implícitamente ni por analogía ensancharse su operación para abarcar materias no señaladas específicamente. *Cortada* v. *Municipio de Ponce*, 47 D.P.R. 615, 630 (1934); *Rubert* v. *Sancho Bonet, Tes.*, supra; 16 *McQuillin, Mun. Corp.* Sec. 44.13 (3ra ed. 1986); E. Córdova, *Curso de Gobierno Municipal*, Río Piedras, Ed. Universitaria, 1964, págs. 341–345; G. Meléndez Carrucini, *Organismos Impositivos de Puerto Rico—Facultades Comparadas*, 18 Rev. Jur. U.I. 27–45 (1983).

Sin embargo, a raíz de aprobarse la nueva Ley de Patentes Municipales que nos ocupa, este enfoque comenzó a reflejar un cambio. En *Molinos de P.R.* v. *Municipio de Guaynabo*, 105 D.P.R. 470, 473–474 (1976), detallamos los

antecedentes históricos doctrinales y resumimos así la nueva postura:

> ... La Ley de Patentes de 1914 contenía una enumeración taxativa; la Ley de Patentes de 1971 contenía una enumeración no taxativa y facultaba a los municipios a clasificar e incluir otros comercios, negocios e industrias no enumerados; la vigente Ley de Patentes de 1974 eliminó la enumeración y concedió una facultad general a los municipios para imponer y cobrar patentes a los tipos que dicha ley prescribe o al tanto po[r c]iento uniforme de dichos tipos que las Asambleas Municipales determinen. Secs. 3, 4 y 5 de la Ley Núm. 113 de 10 de julio de 1974.
>
> *Durante los últimos años ha habido una corriente de pensamiento, no exclusiva desde luego, que favorece la ampliación de la facultad impositiva de los municipios.* Este es el reverso de la medalla de aquella corriente que favorece la devolución a los municipios de una serie de poderes. Prácticamente en todos los casos el ejercicio de un poder o de una facultad por una entidad pública conlleva erogación de fondos. De ahí surge esta tendencia que favorece la ampliación de las facultades impositivas de los municipios. Naturalmente, este es un problema complejo de política pública lleno de concomitancias y corresponde a la Asamblea Legislativa y no al Poder Judicial tomar las decisiones que estime pertinentes. Sin embargo, como dijimos en *Texas Co. (P.R.)* v. *Municipio*, 81 D.P.R. 499, 509 (1959), no estamos justificados en adoptar normas restrictivas "en contra del poder contributivo de los municipios, a la luz de las claras e inequívocas expresiones que de tiempo en tiempo ha venido haciendo la Asamblea Legislativa con el fin de fortalecer, antes que debilitar, la facultad contributiva de los gobiernos municipales concedida en la Ley de Patentes." Cuando hay autoridad de ley para ello y excepto en casos inherentemente sospechosos no estamos inclinados a intervenir con la regulación económica municipal, pues como hemos señalado, esta es una función primordialmente legislativa, *City of New Orleans* v. *Dukes*, 49 L. Ed. 2d 511 (1976). (Énfasis suplido y escolio omitido.)

Posteriormente, en *Arecibo Bldg. Corp.* v. *Mun. de Arecibo*, 115 D.P.R. 76 (1984), ratificamos esta visión más abarcadora. Al interpretar la Sec. 3 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651b, expresamos que del "texto de la ley se desprende que la autoridad concedida a los municipios es amplia. La utilización de las palabras 'toda persona', 'cualquier servicio', 'cualquier industria o negocio' no permiten que se le dé una interpretación restrictiva como pretende la recurrente". Íd., pág. 78.

## IV

■ Con esta perspectiva en mente, concentremos primeramente en el reclamo municipal de que la ley le autoriza a considerar, como parte del ingreso bruto de un banco, los ingresos recibidos por inversiones hechas más allá de sus límites territoriales con capital generado en Puerto Rico.[1] Según antes indicado, la norma general es que los municipios sólo pueden cobrar contribuciones por concepto de ingresos derivados de "la operación específica que la industria o negocio lleva a cabo dentro de su jurisdicción". *Coca Cola* v. *Municipio de Aguadilla*, 99 D.P.R. 839, 841 (1971). Para imponer un tributo por concepto de patente municipal sobre el ingreso bruto derivado de negocios fuera de su jurisdicción, es imprescindible que la Legislatura haya delegado tal poder de manera expresa, diáfana y precisa.[2] Varias razones abonan al respecto.

---

[1] En la actual Ley de Patentes Municipales, las asociaciones de ahorro y préstamo están específicamente incluidas como negocios sujetos a patente. 21 L.P.R.A. sec. 651a(a)(5) y 651a(a)(6)(B). Véase *Municipio de Guayama* v. *Ponce Fed. Sav.*, 105 D.P.R. 285 (1976).

[2] *Commercial Nat. Bank* v. *City of Chicago*, 432 N.E.2d 227 (1982); *City of Evanston* v. *Create, Inc.*, 421 N.E.2d 196 (1981); *Mobil-Teria Catering Co., Inc.* v. *Spradling*, 576 S.W.2d 282 (1979); *City St. Louis* v. *Lee*, 132 S.W.2d 1055 (1939); *City Stores Co.* v. *City of Philadelphia*, 103 A.2d 664 (1954); 16 *McQuillin Mun. Corp.* Sec. 44.91 (3ra ed. 1986); E. Córdova, *Curso de Gobierno Municipal*, Río Piedras, Ed. Universitaria, 1964, págs. 341–345.

Primero, la recaudación extraterritorial de rentas municipales acarrea potencialmente graves problemas. Si un "municipio pudiera ostentar en forma ilimitada ese poder, es evidente que pudiera producirse un desquiciamiento interno dentro del estado, una situación de desenfreno o desbalance impositivo que podría llegar a afectar las fuentes mismas de la riqueza de una nación. Consiguientemente, la ley fundamental de cada país debiera consagrar el derecho del municipio a establecer sus propios impuestos, pero al propio tiempo debiera remitir a la ley ordinaria la determinación de la forma cómo ese poder originario habría de coordinarse con la hacienda pública estatal, *ya sea evitando una doble imposición irracional sobre la misma materia, ya sea fijando límites al tributo local de manera a [sic] posibilitar la coexistencia* con el general y viceversa". (Énfasis nuestro.) Córdova, *op. cit.*, págs. 342–343.

■ Segundo, las tributaciones municipales sobre la industria y el comercio responden a la premisa de que los negocios sitos en su territorio se benefician de la organización local para efectuar sus actividades de interés pecuniario y, por tal razón, contribuyen al sostenimiento de las mismas. La determinación crucial es si el evento económico o la fuente del negocio financiero que genera dicho ingreso está dentro o fuera de la municipalidad. *Mobil-Teria Catering Co., Inc.* v. *Spradling*, 576 S.W.2d 282 (1979); *District of Columbia* v. *Johnson & Wimsatt*, 160 F.2d 913 (D.C. 1947), *cert.* denegado 332 U.S. 760 (1947). *Cf.* McQuillin, *supra*, Secs. 44.191–44.193. Y tercero, la descoordinada imposición de contribuciones en concepto de patentes municipales sobre fuentes de ingreso extraterritoriales puede tener un efecto multiplicador tributario excesivamente oneroso sobre las industrias o negocios comprendidos en la ley.

■ La actual ley municipal contiene suficiente lenguaje en qué apoyar la tesis de que un municipio puede gravar los ingresos de los bancos una vez son recibidos en Puerto Rico, aunque sean derivados de fuentes fuera de la demarcación territorial. A tal efecto, la Sec. 2(a)(6)(A) y 2(a)(6)(B) de la ley define así los términos siguientes:

(6) Volumen de negocios—

(A) Regla general—El término "volumen de negocios" significa los ingresos brutos que se reciben o se devenguen por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones o los ingresos brutos que se reciban o se devenguen por la casa principal en el municipio donde ésta mantenga, oficinas, almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción o cualquier otro tipo de organización de industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios.

(B) Negocio financiero—Cuando se trate de negocio financiero el "volumen de negocios" será los ingresos brutos recibidos o devengados excluyendo:

(1) el costo de la propiedad vendida;

(2) los reembolsos de anticipos, préstamos y créditos concedidos, pero sin que la suma deducida por estos conceptos exceda el principal de dichos anticipos, préstamos o créditos;

(3) los depósitos; y

(4) las pérdidas incurridas en cualquier operación sobre valores, pero sin que la deducción que se haga por ese concepto exceda del total de las ganancias obtenidas por dichos valores.

En el caso específico de *bancos comerciales* y asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro el *ingreso bruto* significará *los intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia.*

El ingreso bruto devengado por estas organizaciones sujeto al pago de patentes se *distribuirá entre las sucursales de acuerdo con la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización.* (Énfasis suplido.) 21 L.P.R.A. sec. 651a(a)(6)(A) y 651a(a)(6)(B).

▮▮▮▮ De la lectura de esta disposición surge que la Asamblea Legislativa estimó como parte del *ingreso bruto* de los bancos los "ingresos derivados de cualquier otra procedencia", 21 L.P.R.A. sec. 651a(a)(6)(B), y por la naturaleza de esa industria creó la regla de distribución proporcional entre todas las sucursales de la isla de "los depósitos totales de la organización". 21 L.P.R.A. sec. 651a(a)(6)(B). Al investigar el alcance de esta disposición notamos que la palabra clave es "procedencia", que en su acepción significa "origen". Así leída, la patente municipal alcanza "las ganancias, beneficios e ingresos derivados de cualquier [origen]". 21 L.P.R.A. sec. 651a(a)(6)(B). El evento económico determinante e impositivo surge cuando esos ingresos son recibidos por el banco en Puerto Rico, con relación a inversiones cuya génesis fue su capital. En este aspecto, es correcto el Reglamento Núm. 3142 del Secretario de Hacienda, que en el Art. 2(7)(A) y (B) visualiza tal facultad al definir "ingreso bruto" como "la *totalidad de los ingresos de fuentes dentro o fuera de Puerto Rico que se reciben o se devenguen en la operación que se lleva a cabo en cada Municipio*, incluyendo todos los ingresos adicionales como intereses y dividendos atribuibles a la operación". (Énfasis suplido.) El evento económico —recibo de ingreso— se da en la demarcación territorial municipal dentro de la cual opera y se beneficia de los servicios municipales.

▮▮▮ En resumen, en los casos de los bancos, la Ley de Patentes Municipales revela claramente que la Asamblea Legislativa tuvo la intención de extender el poder impositivo

del gobierno local municipal, ampliando la sombrilla estatutaria, al sujetar al pago de la patente a los ingresos y beneficios no sólo originados dentro de la demarcación geográfica jurisdiccional del municipio, sino a los ingresos recibidos aunque fueran derivados de las operaciones en bancos fuera de Puerto Rico. Su implantación y pago será a través de la fórmula de proporcionalidad. En consecuencia, erró el foro de instancia al declarar nula e ineficaz aquella parte del Reglamento Núm. 3142 del Secretario de Hacienda, Art. 2(7)(A) y (B), que considera como parte del ingreso bruto de un banco los ingresos derivados de fuentes "fuera de Puerto Rico que se reciben o se devenguen en la operación que se lleva a cabo en cada municipio". Sobre este extremo, la sentencia debe ser modificada.

## V

Réstanos resolver lo referente a los bonos y obligaciones gubernamentales locales y federales. En este aspecto, notamos que realmente estamos ante una *contribución*.

Varios son los factores a tomarse en cuenta al determinar si una exacción es un derecho por licencia reguladora o una contribución para rentas públicas. En general, la naturaleza y propósito de una ordenanza imponiendo una exacción y la naturaleza y el propósito de la ordenanza o el estatuto autorizando la ordenanza, determinará la naturaleza al respecto del carácter de la exacción. Por lo tanto, una declaración o el propósito evidente de reglamentar, aunque no es controlante ni concluyente, tiende a sugerir que se trata de una exacción establecida puramente para fines regulatorios de derechos a una licencia. Pero una ordenanza sin disposiciones para reglamentar e imponer una exacción, constituye una ordenanza contributiva diseñada para recaudar ingresos, especialmente cuando el producto de los derechos de la licencia son ubicados en los fondos o cuentas generales de su presupuesto. *Cuando son impuestos únicamente para rentas públicas, los derechos o cargos por la licencia son contribuciones y sólo pueden soste-*

*nerse si están basados en el poder de imposición de contribución.*

El nombre que describe la exacción es irrelevante para determinar si se trata de un derecho reglamentario o de una contribución para recaudar rentas públicas. En su lugar, las características de la exacción deben tomarse en consideración al determinar su verdadera naturaleza. (Énfasis y traducción nuestra.) McQuillin, *supra*, Sec. 26.16.

■ Hemos visto cómo la Ley de Patentes Municipales establece que "[e]l producto de las [patentes] se [utilizará] para cubrir las atenciones de sus presupuestos". 21 L.P.R.A. sec. 651b. En el caso de autos,(3) la patente municipal no tiene otro propósito que el de recaudar rentas para el municipio. *Cf. R.C.A.* v. *Gobierno de la Capital*, 91 D.P.R. 416, 439 (1964). Como contribución, le está vedado a los municipios considerar parte del ingreso bruto del negocio para computar la patente municipal, los ingresos derivados por el banco, resultantes de bonos y valores del Gobierno federal y del Estado Libre Asociado de Puerto Rico, sus agencias, corporaciones y sus divisiones políticas.

El Art. 3 de la Ley de Relaciones Federales, en lo pertinente, dispone:

... y en los casos en que fuere necesario anticipar contribuciones y rentas para proteger el crédito público, Puerto Rico, o cualquiera de sus municipios, podrá emitir bonos y otras obligaciones de acuerdo con la ley; y todos los bonos emitidos por el Gobierno de Puerto Rico, o por autoridad de éste, *estarán exentos de contribución por el Gobierno de los Estados Unidos, por el Gobierno de Puerto Rico, por cualquiera subdivisión política o municipio del mismo*, o por cualquier Estado, Territorio o posesión, o por cualquier condado, municipio u otra subdivisión municipal de cualquier Estado, Territo-

---

(3) Distinguible del caso de *Mun. de Carolina* v. *Caribair*, 101 D.P.R. 943 (1974), donde —a modo de *obiter dictum*— expresamos que la patente municipal no era una contribución.

rio, o posesión de los Estados Unidos o por el Distrito de Columbia. (Énfasis suplido.) L.P.R.A., Tomo 1, ed. 1982, pág. 213.

Es evidente, pues, que la Asamblea Legislativa de Puerto Rico carece de autoridad para imponer contribuciones sobre los bonos y obligaciones del Gobierno de Puerto Rico o emitidos bajo su autoridad. Como corolario es inoperante e inexistente tal delegación a los municipios. Así, el propio Reglamento Núm. 3142 del Secretario de Hacienda, en el Art. 11(25), reconoce que están exentos de tributación para efectos de la patente municipal "[l]os intereses sobre obligaciones del Estado Libre Asociado de Puerto Rico, sus instrumentalidades y municipios y los intereses de las obligaciones de los Estados Unidos".

En lo que respecta a los bonos emitidos por Estados Unidos de América, la ley federal exime tales obligaciones. 31 U.S.C. sec. 3124. Dicha norma impide que un estado imponga un *onus* contributivo mayor que los tenedores de obligaciones estatales similares, ya que de así ocurrir, la contribución estatal sería discriminatoria e inválida. *Cf. Memphis Bank & Trust Co.* v. *Garner*, 459 U.S. 392 (1983).

Concluimos que la Asamblea Legislativa de Puerto Rico carece de autoridad para imponer contribuciones a los bonos y otras obligaciones emitidas por el Gobierno de Puerto Rico o por autoridad de éste. Por ende, la Legislatura no puede delegar dicho poder a los municipios. En lo concerniente a los bonos y obligaciones emitidos por el Gobierno de Estados Unidos o por autoridad de éste, quedan excluidos de toda tributación por razón de la Ley de Patentes Municipales. Lo contrario equivaldría a configurar una situación de discriminación según provista en la ley federal.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Rebollo López disiente sin opinión escrita.