EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos Luis Torres Santiago y la Sociedad Legal de Gananciales compuesta con Norma Passalacqua Matos<br><br>Demandantes-peticionarios<br><br>v.<br><br>Gobierno Municipal de Coamo Juan Carlos García Padilla<br><br>Demandado-recurrido | Certiorari<br><br>2007 TSPR 46<br><br>170 DPR _____ |

Número del Caso: CC-2005-209

Fecha: 12 de marzo de 2007

Tribunal de Apelaciones:

       Región Judicial de Aibonito

Juez Ponente:

       Hon. Ismael Colón Birriel

Abogados de la Parte Peticionaria:

       Lcdo. Hector A. Matos Matos
       Lcda. Norma Passalacqua Matos

Abogado de la Parte Recurrida:

       Lcdo. Orlando Camacho Padilla

Materia: Sentencia Declaratoria Mandamus

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Luis Torres Santiago
y la Sociedad Legal de
Gananciales compuesta con
Norma Passalacqua Matos                                    *Certiorari*
  Demandantes-peticionarios
                                           CC-2005-209

              v.

Gobierno Municipal de Coamo
Juan Carlos García Padilla
     Demandado-recurrido


Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA


En San Juan, Puerto Rico, a 12 de marzo de 2007.

El Sr. Carlos Luis Torres, en adelante el peticionario, nos pide que revoquemos la sentencia del Tribunal de Apelaciones que desestimó su demanda y, por consiguiente, le concedamos el pago por concepto de vacaciones acumuladas y no utilizadas en exceso del límite de 60 días establecido en la Ley de municipios autónomos del Estado Libre Asociado de Puerto Rico.

I

El peticionario fue alcalde del municipio de Coamo desde el 7 de enero del 1989 hasta el 13 de

enero del 1997, cuando se acogió a la jubilación por edad y años de servicio. En ese momento solicitó que se le pagara la cantidad correspondiente a los días acumulados por razón de vacaciones regulares y días de enfermedad no utilizados. Según quedó evidenciado en el foro de primera instancia por una certificación no controvertida de la directora de Recursos Humanos del municipio de Coamo, el peticionario tenía 142 días de vacaciones acumuladas.

La administración municipal solo le entregó la cantidad equivalente a 60 días de vacaciones y 90 días de enfermedad acumulados, por lo que en misivas fechadas 10 de agosto de 1998 y 22 de agosto de 2001, el peticionario solicitó al municipio que le reembolsara el resto de los días de vacaciones y enfermedad que tenía acumulados. El municipio se rehusó y fundamentó su negativa en que al momento de la separación por retiro del Señor Torres, el organismo municipal no estaba facultado por la legislatura a pagar más de 60 días de vacaciones y 90 días por enfermedad no utilizados. Ante la manifiesta controversia, el 5 de octubre de 2001 el municipio le solicitó al Departamento de Justicia una opinión oficial en cuanto a los derechos del ex alcalde.

El 8 de mayo de 2002 el Señor Torres presentó una demanda sobre Sentencia Declaratoria y *Mandamus* contra el municipio de Coamo y su representante el Alcalde Juan Carlos García Padilla, en la cual solicitó se aclararan

los derechos que le cobijaban bajo la legislación vigente al momento de su retiro. El municipio solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria en apoyo a su postura. Argumentó que de acuerdo a la legislación vigente al momento se separó del cargo, el Señor Torres sólo podía cobrar el máximo acumulable por ley, es decir, 60 días de vacaciones y 90 días por enfermedad. El Señor Torres se opuso a la solicitud de sentencia sumaria en escrito presentado el 18 de junio de 2002. Por entender que habían hechos materiales en controversia que ameritaban una vista en su fondo, el 10 de julio de 2002, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de sentencia sumaria del municipio de Coamo.

El 18 de septiembre de 2002, la Secretaria de Justicia respondió a la solicitud de opinión oficial que le hiciera el municipio de Coamo. Tras una lectura integral de la Ley núm. 152 del 20 de agosto de 1996, y una interpretación de lo resuelto por esta Curia en Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990), determinó que el demandante tenía derecho al pago por el exceso de vacaciones acumuladas sobre el máximo de 60 días, más no así al pago del exceso de días por enfermedad.

Entretanto, las partes solicitaron al tribunal que resolviera el pleito sin la celebración de un juicio,

pues estaban de acuerdo en que la única controversia a resolver era si el Señor Torres tenía derecho a recibir el pago de sus vacaciones y días de enfermedad acumulados en exceso del máximo dispuesto en la ley. El Tribunal de Primera Instancia accedió a la petición de los litigantes y tras recibir sus respectivos memorandos de derecho, decidió favorecer la causa del Señor Torres y dictó sentencia a su favor. Para llegar a dicha determinación, el tribunal acudió a la doctrina del caso de Rodríguez Cruz v. Ayala, *supra*, que estableció que los excesos acumulados y no disfrutados por necesidad de servicio no deben resultar en perjuicio de los empleados. Según la interpretación del foro de primera instancia, tal doctrina indica que para evitar un enriquecimiento injusto procede el pago de las cantidades correspondientes al exceso de vacaciones. Asimismo determinó el tribunal que la Ley núm. 152 del 20 de agosto de 1996, vigente desde el 1 de julio de 1997, aplicaba al señor Torres en cuanto al exceso de vacaciones, pero no en cuanto al exceso de días de enfermedad acumulados. Por ambos motivos ordenó al municipio de Coamo a pagar el exceso de vacaciones regulares acumuladas. La sentencia que así reza fue dictada el 13 de abril del 2004 y archivada en los autos con copia de su notificación el 18 de mayo del 2004.

El 13 de julio de 2004, el municipio de Coamo, inconforme con tal dictamen, recurrió ante el Tribunal de Apelaciones. En su recurso de apelación expresó, entre otras cosas, que el Tribunal de Primera Instancia había errado al aplicar el caso de Rodríguez Cruz v. Padilla Ayala, *supra*, y la Ley núm. 152 del 20 de agosto de 1996, cuya vigencia es posterior a la fecha del retiro del peticionario. El Tribunal de Apelaciones revocó al foro de primera instancia al entender que la doctrina de Rodríguez Cruz v. Padilla Ayala, *supra*, sólo le aplica a empleados que respondan a un patrono, y no a un alcalde, quien no es subordinado de nadie. Además entendió el foro apelativo que no se había probado a su satisfacción alguna necesidad del servicio que justificara la acumulación excepcional de vacaciones durante el periodo de la incumbencia del peticionario.

El 10 de marzo de 2005, el peticionario Carlos Luis Torres Santiago radicó su Solicitud de *Certiorari* ante esta Curia. El 27 de mayo de 2005 emitimos Orden para Mostrar Causa por la cual no debíamos revocar la sentencia recurrida. La parte recurrida compareció en cumplimiento de orden, y con el beneficio de ambos alegatos, estamos listos para resolver.

II

Dada la aspiración de la Ley de municipios autónomos, que pretende tanto descentralizar el gobierno,

como encarnar principios cardinales democráticos de participación ciudadana, se declaró al municipio como "unidad básica para la administración comunitaria". La implementación de dicha política pública descentralizadora trajo un grado mayor de autonomía, mejores herramientas financieras y una ampliación del marco de acción del municipio a áreas que le estaban vedadas o grandemente limitadas en el pasado. Véase la exposición de motivos y el artículo 1.002 de la Ley de municipios autónomos, 21 L.P.R.A. 4001 *et seq*.; López v. Municipio de Mayagüez, 158 D.P.R. 620 (2003); Municipio de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R. 873, 885 (1996).

Como parte de la autonomía que le fuera conferida a los municipios, la Ley de municipios autónomos, en su anterior artículo 12.027, actual artículo 11.028, 21 L.P.R.A. sec. 4577, excluyó expresamente al personal municipal de la aplicación de la ya derogada Ley núm. 5 del 14 de octubre de 1975, conocida como la Ley de personal de servicio público, 3 L.P.R.A. secs. 1301-1431, hoy Ley 3 de agosto de 2004, conocida como Ley para la administración de los recursos humanos en el servicio público, 3 L.P.R.A. secs. 1461-1468p. De esta manera, la Ley de municipios autónomos se convirtió en la fuente de derecho principal para dilucidar las controversias relativas al personal municipal. López v. Municipio de

Mayagüez, *supra*; Hipólito Rivera Ortiz v. Municipio de Guaynabo, 141 D.P.R. 257 (1996). Es decir, las disposiciones sobre personal que aplican a los municipios son las de la Ley de municipios autónomos, 21 L.P.R.A. secs. 4551-4579. Ángel L. Ortiz v. Municipio de Lajas, 153 D.P.R. 744 (2001).

La Ley de municipios autónomos estableció un sistema de personal similar al dispuesto para las agencias de gobierno en la Ley de personal del servicio público, actual Ley para la administración de los recursos humanos en el servicio publico, por lo que es imperativo reiterar que consecuentemente hemos aplicado la jurisprudencia dimanante de casos presentados bajo el palio estas leyes a los empleados municipales. López v. Municipio de Mayagüez, *supra*, págs. 628-629.

El Capítulo 12 de la Ley de municipios autónomos comprende todo lo concerniente al funcionamiento de un sistema de personal responsivo a las necesidades particulares y a la estructura administrativa de los municipios. Hipólito Rivera Ortiz v. Municipio de Guaynabo, *supra*, pág. 265. El sistema de personal de la Ley de municipios autónomos consiste en una serie de disposiciones de administración de personal incluida en una ley orgánica que se concentra en la delegación de poderes gubernamentales a los municipios. Ese sistema de personal provee a dichos organismos un esquema general

para la administración de sus empleados. <u>Ángel L. Ortiz v. Municipio de Lajas</u>, *supra*, pág. 754, citando a R.L. Nieves, <u>La participación ciudadana en la Ley de Municipios Autónomos de 1991: un laboratorio de posibilidades democráticas para Puerto Rico</u>, 67 Rev. Jur. U.P.R. 467, 484 (1998).

Un aspecto regulado por nuestra legislación laboral es la concesión de beneficios marginales a los trabajadores. Entre dichos beneficios se encuentran las licencias de vacaciones y de enfermedad, concedidas a los trabajadores por imperativos de política pública firmemente establecidos y originarios de las fervientes luchas obreras de antaño. El beneficio de las vacaciones representa un hito más en la lucha por la emancipación de los asalariados. En opiniones anteriores hemos expresado que el propósito de las vacaciones es concederle al empleado un período de descanso que le ayude a reparar periódicamente las fuerzas físicas y mentales que el diario trajín agota, así como brindarle la ocasión de compartir ratos de tranquilidad y sosiego con su familia. Las vacaciones son la única oportunidad que tiene el trabajador para poder gozar de días completos en la compañía de su familia durante un período razonable. <u>Ramos Villanueva v. Departamento de Comercio</u>, 114 D.P.R. 665, 666 (1983); <u>Rivera Maldonado v. Autoridad Sobre Hogares</u>, 87 D.P.R. 453, 456 (1963).

En el caso de <u>Sucesión Álvarez Crespo v. Pierluisi</u>, 150 D.P.R. 252, 270-271 (2000), tuvimos la oportunidad de expresarnos sobre el significado particular de las licencias de vacaciones y enfermedad. Explicamos que la licencia de vacaciones tiene como propósito ofrecer al funcionario un periodo de descanso y distracción que lo releve temporalmente de las labores y responsabilidades inherentes a su cargo, sin pérdida de los emolumentos correspondientes. Antes, en <u>Rivera Maldonado v. Autoridad Sobre Hogares</u>, 87 D.P.R. 453, 457, (1963), habíamos expresado que el empleado debe disfrutar de sus vacaciones como cuestión de interés público, pues no sólo está envuelto su bienestar, sino el de la comunidad en general. Por eso se promueve que el empleado tome sus vacaciones cada año y no las acumule. De hecho, en esa ocasión nos expresamos en contra de la acumulación de vacaciones y dejamos consignado que

> …las autoridades nominadoras deben estar atentas para ofrecer al empleado la oportunidad de disfrutar de las vacaciones que la ley le concede y que **dentro de la necesidad del servicio** deben insistir en que éstos disfruten anualmente de período de descanso. (Énfasis suplido).

Vemos entonces que desde el 1963, se ha venido forjando una excepción a la norma que promueve el uso anual del período de descanso. La necesidad del servicio constituye la razón para eludir el interés público de que los empleados tomen sus vacaciones, ello por la

existencia de otro interés público de mayor jerarquía que radica en la buena administración del país y en la necesidad del buen gobierno. En Díaz González v. Tribunal Superior, 102 D.P.R. 195, 211 (1974) articulamos nuestra concepción del servicio público de la siguiente manera:

> Dicha obligación de servir se basa en la lealtad al país, a la Constitución, la idea de la primacía de la ley sobre la posible arbitrariedad humana, al respeto a la dignidad [de las personas], en el sano orgullo o espíritu profesional del servidor público, y en suma, en los altos valores del espíritu.

En el contexto de los municipios, hemos reiterado la importancia de las funciones del alcalde en la estructura y funcionamiento de una célula social tan vital como lo es un municipio.[1] En efecto, el alcalde es la figura central en la administración pública y la sociología política de la comunidad municipal. P.P.D. v. Planadeball Poggy, 121 D.P.R. 570, 575 (1988); Gobernador de P.R. v. Alcalde de Juncos, 121 D.P.R. 522, 531- 532 (1988), citando a Efrén Córdova, Curso de Gobierno Municipal, Río Piedras, Ed. Universitaria, 1964, págs. 195-198 y C.J.

---

[1] Como dijimos en Rodríguez Cruz v. Padilla Ayala, supra, pág. 510, citando el texto de Banco Popular v. Municipio de Mayagüez, 120 D.P.R. 705, 709 (1988):

> La razón de ser y finalidad principal de los municipios es satisfacer las necesidades públicas y propias de la comunidad local. El municipio es un ente mediante el cual el Estado puede atender de manera más efectiva el bienestar social y económico de un conglomerado vecinal específico, de acuerdo con sus necesidades y urgencias en particular.

Antieau, Municipal Corporation Law, Nueva York, Ed. Matthew Bender, 1979, Sec. 22.194.

Por eso hemos sido enfáticos al expresar nuestra opinión sobre la importancia de la figura del alcalde en nuestro sistema democrático. Al respecto, este Tribunal ha recalcado los imperativos de política pública sobre la mejor administración pública que debe imperar en los municipios, y a los efectos hemos hecho hincapié en la necesidad de certeza, estabilidad y continuidad en el descargo de las funciones del alcalde, y la prestación ininterrumpida de servicios municipales. En Norat Zayas v. Hernández Colón, 131 D.P.R. 614, 624 (1992), dijimos que el "alcalde realiza en Puerto Rico una importante y delicada misión. Suya es la responsabilidad de dirigir y orientar la cosa pública dentro de normas de estricto orden y rectitud intachable".

En su libro, Efrén Córdova, *op. cit.*, pág. 196, nos explica dos proyecciones que tiene la figura del alcalde en la sociedad, por un lado está la proyección paternalista o extralegal, y por otro lado está la proyección administrativa. En su dimensión paternalista…

> …el alcalde, por efecto de la costumbre y por el peso de la tradición, viene a ser ante la imaginación popular una especie de "padre de todos", una figura cordial y accesible que funge como dispensador de servicios, centro de convergencia de los más variados requerimientos e invitado de honor en eventos cívicos, sociales, deportivos, etc.

En la otra dimensión, la de su personalidad administrativa, se encuentran las funciones delegadas por la Asamblea Legislativa en leyes como la Ley de municipios autónomos, Ley núm. 81 del 30 de agosto de 1991. El citado autor menciona algunas funciones típicamente delegadas a los alcaldes:

> …planificación, organización (incluyendo inspección y supervisión), dirección incluyendo mando y coordinación), administración específica de personal, administración específica de las finanzas y relaciones públicas, así como que supone el uso de facultades discrecionales y tener la habilidad necesaria para analizar los problemas, tomar decisiones, hacer que ellas se lleven a la práctica, exigir y asumir responsabilidades, delegar actividades, inspirar entusiasmo, impulsar programas y crear espíritu de de cuerpo… Córdova, *op. cit*, pág. 197.

Tras la implementación de la reforma municipal estructurada en la Ley de municipios autónomos, la figura del Alcalde adquirió un mayor grado de influencia, y con ello un mayor grado de responsabilidad en sus gestiones, tanto administradoras como tradicionales. El Alcalde es, según el artículo 3.009 del texto original de la Ley de municipios autónomos, 21 L.P.R.A. sec. 4199, "la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección, administración y la fiscalización del funcionamiento del municipio." Sus facultades y deberes son amplios conforme al ministerio para el que ha sido electo y de acuerdo a la estructura de gobierno que estableció la antes

mencionada Ley de municipios autónomos, cuya exposición de motivos establece que:

> Delegar responsabilidad mediante esta legislación y colocar en el pueblo la obligación de exigir cumplimiento a los alcaldes cada cuatro años por el trabajo que han realizado, debe ser el marco de referencia en que habrán de moverse en el futuro nuestros Municipios.

De lo anterior se colige el gran interés público, tanto en retener a dicho funcionario en el más cabal cumplimiento de sus polifacéticos menesteres, como en promover su constante y persistente presencia. En la sentencia recurrida, el Tribunal de Apelaciones, así lo reconoce y acepta que:

> …un alcalde no está sujeto a un horario de trabajo fijo y que su labor como primer ejecutivo municipal demanda esfuerzos heroicos tanto de día como de noche y de madrugada, así como sábados, domingos y días feriados.

III

Al momento en que el peticionario se separó de su cargo, el artículo 12.016 de la Ley de municipios autónomos, 21 L.P.R.A. sec. 4566, según enmendado[2], disponía lo siguiente en cuanto a la concesión de licencias por vacaciones y enfermedad:

> Beneficios marginales--Días feriados y licencias

> Los empleados municipales tendrán derecho, adicionalmente a los beneficios marginales que se establecen por leyes especiales, incluyendo

---

[2] Por virtud de la Ley núm. 35 del 13 de abril de 1995, se enmienda por primera vez esta sección. Desde el 1996 esta sección ha sido objeto de múltiples enmiendas que no aplican al caso que nos ha tocado resolver hoy, pues dichas enmiendas no son de aplicación retroactiva.

las disposiciones vigentes sobre días feriados, a los siguientes:

(a)...

(b) Licencias.--

(1) Licencia de vacaciones.--Los empleados de carrera, de confianza y transitorios tendrán derecho a acumular licencia de vacaciones a razón de dos días y medio (2 1/2) por cada mes de servicio. Los empleados a jornada parcial acumularán dicha licencia en forma proporcional al número de horas en que presten servicios regularmente.

Cada organismo municipal deberá preparar y administrar un plan de vacaciones en la forma más compatible posible con las exigencias del servicio y que evite que los empleados acumulen licencia en exceso del máximo permisible por año natural.

Todo empleado podrá acumular vacaciones hasta un máximo de sesenta (60) días laborables al finalizar cada año natural. **Si por necesidad del servicio no puede disfrutar de la licencia acumulada, la autoridad nominadora municipal le deberá conceder cualquier exceso del límite de sesenta (60) días dentro de los primeros seis (6) meses del siguiente año natural.** La autoridad nominadora deberá tomar las medidas necesarias para conceder el disfrute de vacaciones empleado siempre que sea posible. El alcalde adoptará, a través de su Oficina de Recursos Humanos, las normas que regirán cuando sea la necesidad de anticipar licencia de vacaciones a empleados.

Cuando las circunstancias y méritos del caso lo justifiquen, se podrá autorizar a cualquier empleado a utilizar las vacaciones acumuladas por un período mayor de treinta (30) días y hasta un máximo de sesenta (60) en cualquier año natural.

(2) Licencia por enfermedad.--Todo empleado de carrera, de confianza y transitorio tendrá derecho a licencia por enfermedad a razón de un día y medio (1 1/2) por cada

mes de servicio. Los empleados a jornada parcial acumularán licencias por enfermedad en forma proporcional al número de horas en que presten servicios.

Los empleados del servicio de trabajadores que durante cualquier año natural hayan prestado servicios por un período de seis (6) meses o más tendrán derecho a acumular licencia de enfermedad a razón de uno y medio (1 1/2) días por cada mes trabajado y licencia de vacaciones a razón de dos y medio (2 1/2) días por cada mes trabajado.

La licencia por enfermedad se utilizará exclusivamente cuando el empleado se encuentre enfermo, incapacitado o expuesto a una enfermedad contagiosa que requiera su ausencia del trabajo para su protección o la de otras personas. La autoridad nominadora podrá exigirle al empleado un certificado médico expedido por un médico autorizado a ejercer la medicina en Puerto Rico donde se certifique que estaba incapacitado para el trabajo durante el período de ausencia.

La licencia por enfermedad se podrá acumular hasta un máximo de noventa (90) días laborables al finalizar cualquier año natural. El empleado podrá utilizar toda la licencia por enfermedad que tenga acumulada durante cualquier año natural. (…) (Énfasis suplido).

El artículo anteriormente transcrito otorga el derecho a acumular vacaciones por encima del límite de 60 días bajo las circunstancias excepcionales que mencionamos anteriormente y que se circunscriben a la necesidad del servicio. En Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486, 495 (1993), al comentar una disposición análoga, dijimos que la misma tiene el propósito primordial de evitar que los servidores

públicos pierdan vacaciones acumuladas cuando por necesidades del servicio no puedan disfrutarlas durante el año. Dicho beneficio favorece al servicio público, pues no obliga a que se tengan que conceder, indefectiblemente, vacaciones anuales a todos los empleados. Esta flexibilidad evita que se perjudique el servicio público en ciertas circunstancias, pues permite que el empleado o funcionario continúe cumpliendo con el deber que el servicio público requiere de su persona, con la tranquilidad de saber que está acumulando sus vacaciones para el momento oportuno en que las necesidades del servicio le permitan el descanso.

Por otro lado, cuando el empleado o funcionario se separa definitivamente del empleo, el artículo 12.020, hoy artículo 11.021, de la Ley de municipios autónomos, 21 L.P.R.A. sec. 4570, preceptúa el pago global por licencia acumulada, y a los efectos dispone que:

> Al renunciar a su puesto, o a la separación definitiva del servicio público por cualquier causa, todo funcionario o empleado municipal tendrá derecho a percibir, y se le pagará en un término no mayor de treinta (30) días, una suma global de dinero por la licencia de vacaciones que tuviere acumulada a la fecha de su separación del servicio, hasta un máximo de sesenta (60) días laborables.

> De igual forma, a todo funcionario y empleado municipal se le pagará la licencia por enfermedad que tenga acumulada, hasta un máximo de noventa (90) días laborables, a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno del Estado Libre Asociado de Puerto Rico. Si no lo fuere a su

separación definitiva del servicio, debe haber prestado, por lo menos, diez (10) años de servicios. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado esté devengando al momento de su separación del servicio, independientemente de los días que hubiere disfrutado de estas licencias durante el año.

Se faculta a la autoridad nominadora para autorizar tal pago.

(…)

El artículo 12.016, que hemos transcrito anteriormente, se refiere a "empleados de carrera, de confianza y transitorios", mientras que el artículo 12.020, *supra*, se refiere a todo funcionario o empleado municipal. La Ley de municipios autónomos distingue los conceptos de empleado municipal y funcionario municipal en su artículo 1.003, 21 L.P.R.A. sec. 4001:

(n) Empleado.--Significará toda persona que ocupe un puesto y empleo en el gobierno municipal que no esté investido de parte de la soberanía del gobierno municipal y comprende los empleados regulares, irregulares, de confianza, empleados con nombramientos transitorios y los que estén en período probatorio.

(…)

(q) Funcionario municipal.--Significará toda persona que ocupe un cargo público electivo de nivel municipal, el Secretario de la Legislatura y los directores de las unidades administrativas de la Rama Ejecutiva Municipal.

Una lectura conjunta y restrictiva del articulado, podría llevarnos a concluir que un alcalde o funcionario municipal, a diferencia de un empleado municipal, no puede acumular vacaciones en exceso de los 60 días, ni

disfrutar de dicho exceso en los primeros seis meses del próximo año natural aunque por necesidad del servicio no pudiera tomarse el período de descanso al cual tiene derecho. Dicha lectura literal obligaría a los alcaldes a tomarse vacaciones anualmente, cosa que puede resultar incompatible con los deberes de su función. Según la letra de los estatutos al momento de los hechos en controversia, tampoco serían compensados los empleados ni funcionarios, al separarse del servicio, por sus vacaciones acumuladas en exceso de los 60 días.

No podemos conferirle una interpretación tan restrictiva a un estatuto que al igual que otras legislaciones laborales tiene un carácter reparador, por lo que debe tomarse como un instrumento de justicia social. Más aún, cuando la Ley de municipios autónomos expresamente establece, como norma, la interpretación liberal de sus disposiciones. Artículo 1.004, 21 L.P.R.A. sec. 4002. Municipio de San Juan v. Banco Gubernamental de Fomento, 140 D.P.R. 873, 886 (1996).

En reiteradas ocasiones hemos expresado la regla de interpretación estatutaria aplicable a las leyes laborales en cuanto a que deben interpretarse liberalmente, resolviéndose toda duda de la forma más favorable hacia el obrero, para así cumplir con sus

propósitos eminentemente sociales y reparadores.[3] La interpretación liberal y abarcadora de estas leyes a favor de aquellos a quienes las mismas intentan proteger es imperativa, de modo que dicha protección se extienda al mayor número de casos. Sánchez Isaac v. Sylvania Lighting, Co., 2006 TSPR 27; Rodríguez Rosado v. Syntex, 160 D.P.R. ____, 2003 TSPR 145, 2003 JTS 147; Muñoz Hernández v. Policía de Puerto Rico, *supra*, pág. 496; R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes de Puerto Rico, 2[da] ed. rev., San Juan, Publicaciones J.T.S., 1987, T. I, pág. 455-459. En González v. Adm. de Sistemas de Retiro, 113 D.P.R. 292, 294 (1982) resolvimos que al interpretarse un

---

[3] En Muñoz Hernández v. Policía de P.R., *supra*, pág. 497, con relación a la forma de interpretar los estatutos de carácter reparador o remedial, y sobre lo que constituye una interpretación liberal, acogimos las palabras del tratadista Sutherland, *op. cit.,* quien dijo que:

> Remedial statutes are liberally construed to suppress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established. Expressions of a rule to that effect appear over and over in judicial opinions. What is called a liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction. 3 Sutherland, Statutes and Statutory Construction Sec. 60.01, pág. 147, (5ta ed. 1992).

estatuto de naturaleza reparadora, no es la letra de la ley, sino su espíritu, lo determinante de su significado.[4]

En Pinan v. Mayagüez Sugar Co., Inc., 84 D.P.R. 89 (1961) claramente establecimos la norma de que la exclusión de un empleado de los beneficios de la legislación laboral **por tratarse de un ejecutivo** debe ser clara. En dicho caso impusimos una interpretación restrictiva a las exclusiones de beneficios y adoptamos la doctrina establecida en Mitchell v. Kentucky Finance Co., 359 U.S. 290, 295 (1958) y Dalehite v. United States, 346 U.S. 15, 31 (1952). El extender una exención a aquellos que no estén claramente excluidos según la letra o según el espíritu de la ley, constituirá un abuso del proceso de interpretación o una frustración de la voluntad expresada por el pueblo. Sierra, Comisionado v.

---

[4] Véanse también Otero de Ramos v. Díaz Saldaña, *supra*; Rosario Toledo v. Distribuidora Kikuet, 151 D.P.R. 634, 644 (2000); Cuevas Santiago v. Ethicon Division of Johnson and Johnson, 148 D.P.R. 839, (1999); Piñero v. A.A.A., 146 D.P.R. 890 902, (1998); Dorante v. Wrangler of Puerto Rico, *supra*; Méndez v. F.S.E., 140 D.P.R. 375, 380 (1996); Torres v. Star Kist Caribe, Inc., 134 D.P.R. 1024 (1994); Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993); Calderón v. Adm. Sistemas de Retiro, 129 D.P.R. 1020, 1034 (1992); Morales v. Adm. Sistemas de Retiro, 123 D.P.R. 589 (1989); Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372, 378 (1985); Villanueva Pérez v. Comisión Industrial, 109 D.P.R. 790 (1980); Caballero Meléndez v. Sistema de Retiro, *supra*; Ruíz Firpo v A.C.A.A., 109 D.P.R. 1 (1979); Alonso García v. Comisión Industrial, 102 D.P.R. 733 (1972).

<u>Llamas</u>, 73 D.P.R. 908, 916 (1952) citando a <u>Phillips Inc. v. Walling</u>, 324 U.S. 490 (1945).[5]

Siguiendo el mismo razonamiento, no podemos permitir que una lectura literal nos lleve a la conclusión de que el artículo 12.016 no incluye a funcionarios municipales.[6] Como es sabido, se debe evitar una interpretación literal que conduzca a resultados irrazonables o absurdos, o que de lugar a distinciones que carezcan de una base racional. <u>Pueblo v. Zayas Rodríguez</u>, 147 D.P.R. 530, 537-539 (1999); <u>Ready Mix Concrete Inc. v. Comisión Industrial</u>, 92 D.P.R. 37, 41 (1965).[7]

---

[5] Véanse también <u>Calderón v. Esso Standard Oil Co.</u>, 92 D.P.R. 129 (1965); <u>Lopez Vega v. F. Vega Otero, Inc.</u>, 103 D.P.R. 175 (1974) y R.E. Bernier y J.A. Cuevas Segarra, *op. cit.* pág. 313.

[6] La Ley núm. 291 del 21 de agosto de 1999, fue adoptada, precisamente con el propósito de aclarar el aparente contrasentido entre los artículos 12.016, actual artículo 11.016, y el artículo 12.020, actual artículo 11.021. Así expresa, en su exposición de motivos, lo siguiente:

> …el artículo 12.020 pone de manifiesto la intención legislativa relativa a que todo funcionario o empleado municipal pueda gozar del derecho a acumular licencia de vacaciones…
>
> Habiéndonos percatado del contrasentido de los artículos referentes a la acumulación de licencia de vacaciones, es la intención de la presente Asamblea Legislativa clarificar que **todo funcionario** tiene derecho a disfrutar de licencia de vacaciones y a acumular dicha licencia cuando por necesidades del servicio no pueden disfrutarla. (Énfasis suplido).

[7] Véanse también <u>Otero de Ramos v. Díaz Saldaña</u>, *supra* pág. 884; <u>Ad. Miranda Inc. v. Falcón</u>, 83 D.P.R. 735, 745 (1961).

Según la regla de interpretación *in pari materia*, presente en nuestra jurisprudencia desde hace más de un siglo, las diversas secciones, artículos o apartados de una ley, y las diversas leyes relacionadas entre sí por su objetivo o propósito, no deben ser interpretadas separadamente, sino refiriéndose las unas a las otras como un todo, buscando la intención legislativa. En otras palabras, deben ser tratadas como un todo armónico, leyéndolas en conjunto y no interpretando aisladamente sus disposiciones. Municipio de San Juan v. Banco Gubernamental de Fomento, *supra* pág. 884; Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 90 (1983); Ex Parte Bird, 5 D.P.R. 247, 265, (1904); Op. Sec. Just. 1993-31.[8]

En cuanto a si procede o no acumular vacaciones más allá de los 60 días que establece el estatuto como límite para el pago global, el caso de Rodríguez Cruz v. Padilla Ayala, *supra,* si bien no resuelve la controversia que hoy atendemos, arroja luz sobre el camino que debemos tomar. En aquella ocasión el empleado Sr. Rodríguez exigía el pago del exceso de vacaciones que por necesidad del servicio tuvo que acumular. La necesidad del servicio quedó sostenida por la prueba que presentó el Sr. Rodríguez, que demostró que su patrono no le permitió

---

[8] Véanse también Delgado v. D.S.C.A., 114 D.P.R. 177, 182 (1983), citando a Cirino v. Fuentes Fluviales, 91 D.P.R. 608, 616 (1964); Andino v. Fajardo Sugar Co., 82 D.P.R. 85, 94 (1961);

tomarse las vacaciones en su momento, ni tampoco permitió disfrutar del exceso acumulado dentro de los primeros seis meses del próximo año natural. El Sr. Rodríguez no se había separado de su empleo, sino que se había transferido a otro puesto dentro del servicio público, por lo cual no procedía, según resolvimos, el pago global por licencia acumulada  y ordenamos que se le permitiera al Sr. Rodríguez disfrutar del exceso de vacaciones con paga, ello para evitar que los actos del municipio, su entonces patrono, le afectaran su derecho al descanso. Así lo expresamos: "No debemos penalizarle por la falta de diligencia del municipio. Además, de otro modo, el municipio se beneficiaría del incumplimiento de su deber."

Aún cuando el caso antes discutido no lo formulara expresamente, es evidente el ánimo justiciero y la aspiración de equidad que subyace la opinión. Así lo ha interpretado el Departamento de Justicia, que a través de opiniones emitidas por distintos Secretarios ha expresado que el caso de Rodríguez Cruz v. Padilla Ayala, *supra,* pretende evitar un enriquecimiento injusto por parte del municipio a costa de la necesidad del servicio público. Véanse Op. Sec. Just. 2002-16 y Op. Sec. Just. 1992-29. En la última opinión citada, el Secretario se expresó como sigue:

> Es de notar que el Tribunal [en Rodríguez Cruz v. Padilla Ayala, *supra*] ordenó que el

empleado en cuestión disfrutara, pero no se le pagara la totalidad de la licencia de vacaciones acumulada, inclusive el exceso sobre el límite máximo de 60 días, porque no hubo desvinculación del servicio. Por consiguiente, resulta razonable inferir que en caso contrario, es decir, si hubiera ocurrido tal desvinculación del servicio, el Tribunal habría ordenado el referido pago total. (…)

Es preciso advertir sin embargo que esta norma no establece derechos nuevos o adicionales, sino que más bien constituye un remedio para los casos en que, por necesidades del servicio, los organismos gubernamentales no puedan proveer para el disfrute adecuado de la licencia de vacaciones acumulada de sus empleados. **Por consiguiente, dicho remedio solo procederá en casos excepcionales, en los cuales las circunstancias prevalecientes en el organismo gubernamental, así como la naturaleza de las funciones que desempeña el empleado, hacen imprescindible su presencia continua en el lugar de trabajo, por necesidades inaplazables del servicio.** (Énfasis suplido).

De acuerdo a la ya discutida regla de hermenéutica aplicable a la legislación laboral, en Narciso Matos Nazario v. Autoridad de Carreteras y Transportación, *et al*, 154 D.P.R. 2, 24-27 (2001) resolvimos que aunque una agencia no tenga reglamentación aprobada en cuanto al pago del exceso por concepto de licencias acumuladas, si recibió los servicios del empleado, le corresponde satisfacer el pago por el exceso de dichas licencias de vacaciones y enfermedad acumulado mientras éste rindió servicios. En dicha ocasión la agencia tenía un carácter análogo al de los municipios, pues en virtud de su ley habilitadora era un "administrador individual" en asuntos de personal. Nuestra opinión se fundamentó en dos

razones: en primer lugar, que el reglamento de la agencia no prohibía el pago del exceso; en segundo término, la necesidad de evitar una situación de enriquecimiento injusto de parte de dicha agencia y en perjuicio del empleado, que no podría recibir dicha compensación de otra manera.[9] Así, quedó claramente establecido en nuestra jurisprudencia que cuando no se permite el disfrute de la licencia de vacaciones acumuladas y luego tampoco se permite el pago de dicha licencia, nos enfrentamos a una situación de enriquecimiento injusto por parte del organismo gubernamental concernido.[10]

---

[9] El reglamento de la agencia disponía que los empleados podían acumular licencia de vacaciones hasta un máximo de sesenta (60) días laborables y hasta un máximo de noventa (90) días por enfermedad.  No obstante, dicho reglamento no proveía --ni tampoco prohibía-- para el pago en efectivo del exceso por días acumulados en licencias de vacaciones y enfermedad.

[10] En este contexto, y a pesar de que no aplica al presente caso, nos parece importante recalcar que la ley Núm. 152 del 20 de agosto de 1996, que entró en vigencia en julio del 1997 añadió al artículo 12.016 de la Ley de municipios autónomos el siguiente párrafo:

> Se faculta a los organismos municipales a pagar al empleado vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, vía excepción, cuando por circunstancias extraordinarias del servicio ajenas a su voluntad, el empleado no ha podido disfrutar la misma durante los seis (6) meses siguientes al año natural que refleja el exceso. De acontecer dicha situación, el empleado podrá optar por autorizar al organismo municipal concernido a transferir al Departamento de Hacienda cualquier cantidad monetaria por concepto del balance de licencia de vacaciones acumuladas en el año natural en exceso del límite máximo autorizado por ley, a fin de que

Es importante aclarar que un remedio en equidad como el que hoy concedemos tiene tanto su razón de ser como sus confines en la buena fe del reclamante. Según opinamos en <u>Estado Libre Asociado de Puerto Rico v. Cole Vázquez,</u> 2005 TSPR 46:

> No podemos validar la erogación de fondos públicos para satisfacer el sueldo, bonos, licencias por vacaciones y enfermedad a un empleado municipal cuando éste no realizó labor alguna destinada a su empleo en el municipio… Esto constituye un claro ejemplo del uso indebido de fondos públicos que prohíbe nuestra Constitución. Como máximos intérpretes de la misma, es nuestro deber y responsabilidad velar porque dichos fondos respondan directamente a las necesidades de la ciudadanía…

Por tal razón debemos advertir que en casos como el de autos, una petición de pago de los excesos de 60 días de vacaciones debe estar acompañada por evidencia fehaciente que establezca la necesidad del servicio por la cual el empleado o funcionario no haya podido disfrutar de sus vacaciones. El peticionario presentó como evidencia de las vacaciones acumuladas una

---

se acredite la misma como pago completo o parcial de cualquier deuda por concepto de contribuciones sobre ingreso que tuviere al momento de autorizar la transferencia.

Dicha enmienda a la Ley de municipios autónomos también adicionó, al final del primer párrafo del artículo 12.020, sobre el pago global de licencia acumulada lo siguiente:

Se faculta a la autoridad nominadora para autorizar tal pago o cualquier balance en exceso no disfrutado por necesidad del servicio y que no haya sida pagado por el municipio según lo dispuesto en la sec. 4566(b) de este título para circunstancias extraordinarias, vía excepción.

certificación suscrita por Mirna Cardona Correa, Directora Interina del Departamento de Recursos Humanos, con fecha del 31 de diciembre del 1996. Según la certificación, el peticionario dejo de disfrutar de 142 días de vacaciones entre el 1991 y el 1996 por exceso de trabajo, equivalente a $25,773.00 de acuerdo al sueldo que recibía el peticionario mientras era alcalde. Dicha certificación no fue refutada por los recurridos y constituyó evidencia suficiente y preponderante para establecer la necesidad del servicio según el juicio del Tribunal de Primera Instancia.[11]

Al tomar en consideración la función del alcalde en nuestro sistema democrático y en la estructura de gobierno de nuestro país, nos parece indudable la necesidad del servicio constante de dicha figura. De acuerdo a la interpretación liberal que nos imponen tanto

---

[11] El 28 de febrero de 1998, la Oficina del Comisionado de Asuntos Municipales (OCAM) emitió el memorando circular núm. 98-03, mediante el cual establece los requisitos evidenciarios que a la luz de la enmienda impuesta por la Ley 152 del 20 de agosto de 1996 se requieren para establecer "necesidad del servicio" que justifique el pago del exceso de vacaciones a un alcalde. Al respecto la OCAM establece tres maneras de probar la necesidad del servicio:

    a. Mediante certificación bajo juramento del Director de Recursos Humanos del municipio donde se exprese que el Alcalde no pudo disfrutar sus licencias por necesidad del servicio;
    b. Mediante resolución de la Asamblea Municipal reconociendo este hecho o,
    c. Mediante la combinación de los mecanismos antes mencionados.

la Ley de municipios autónomos como nuestra legislación laboral, revocamos en parte el dictamen del Tribunal de Apelaciones y ordenamos al Municipio de Coamo a satisfacer el pago correspondiente al exceso de 60 días que el peticionario acumuló mientras estaba en servicio como alcalde de dicho municipio.

Se dictará sentencia de conformidad.


                                        Liana Fiol Matta
                                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos Luis Torres Santiago
y la Sociedad Legal de
Gananciales compuesta con
Norma Passalacqua Matos
  Demandantes-peticionarios

*Certiorari*

CC-2005-209

v.

Gobierno Municipal de Coamo
Juan Carlos García Padilla
    Demandado-recurrido

*SENTENCIA*

En San Juan, Puerto Rico, a 12 de marzo de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca el dictamen del Tribunal de Apelaciones y se ordena al Municipio de Coamo a satisfacer el pago correspondiente al exceso de 60 días que el peticionario acumuló mientras estaba en servicio como Alcalde de dicho Municipio.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita; los Jueces Asociados señor Fuster Berlingeri y Rivera Pérez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo